# EXHIBIT "A"

## *LINGAGOUD MEMULA, et al.*

## *v.*

## *JAMES PREIMESBERGER, et al.*

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C., Section 1446
## [FEDERAL QUESTION]

# EXHIBIT "A"

1  George G. Braunstein, Esq. (State Bar No. 134602)
        George@braunsteinpc.com
2  Clark Anthony Braunstein, Esq. (State Bar No. 278023)
        Clark@braunsteinpc.com
3  Annie Berlin, Esq. (State Bar No. 290508)
        Annie@braunsteinpc.com
4  BRAUNSTEIN & BRAUNSTEIN, P.C.
5  11755 Wilshire Blvd., Suite 2140
   Los Angeles, California 90025
6  Telephone:    (310) 914-4999
   Facsimile:    (310) 914-4996
7  Website:      Http://www.BraunsteinPC.com

8  Attorney for Plaintiffs

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11        COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

12

13  LINGAGOUD MEMULA, an Individual; ASHISH      Case No.    BC 5 7 9 1 8 9
14  PATEL, an Individual; GUNVANTBHAI B.
15  PATEL, an Individual; ASHAY KALE, an
    Individual; UMA KALE, an Individual; PANKAJ
16  PATEL, an Individual; RAJENDRA B. MAKAN,     **COMPLAINT FOR DAMAGES**
    an Individual; PIYUSH PATEL, an Individual;
17  SHARMI PATEL, an Individual; ASHVIN
    CHHANA, an Individual; VIREN DAHYA, an       **JURY TRIAL DEMANDED**
18  Individual;  ATUL KUMAR, an Individual;
19  BHAVNA MEHTA, an Individual; BAKUL
    MEHTA, an Individual; DHANJI PATEL, an
20  Individual; BABUBHAI PATEL, an Individual;
    BHAVNA PATEL, an Individual; ANJU PATEL,
21  an Individual; DIPAK T. PATEL, an Individual;
    HASMUKHLAL PATEL, an Individual; JAYA T.
22  PATEL, an Individual; JIGNESH PATEL, an
    Individual; KISAN MAHENDRA CHHOTALAL,
23  an Individual; MANISHA MAHENDRA
24  CHHOTALAL, an Individual; PADMABEN
    PATEL, an Individual; PRAMOD B. PATEL, an
25  Individual; DAKSHA P. PATEL, an Individual;
    PRAVIN PATEL, an Individual; YOGITA PATEL,
26  an Individual; YOGESH N. PATEL, an Individual;
    ROOPA PATEL, an Individual; SURESH R.
27  PATEL, an Individual; SURESH PATEL, an
28  Individual; KARANJIT KOONER, an Individual;

COMPLAINT

FILED
Superior Court of California
County of Los Angeles

APR 17 2015

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
      Myrna Beltran

ORIGINAL

CITY/DEPT: BC579189
LEA/DEF#:

RECEIPT #: CCH28019709I
DATE PAID: 04/17/15  03:42 PM
PAYMENT: $1,435.00
RECEIVED:
    CHECK:            $1,435.00
    CASH:                 $0.00
    CHANGE:               $0.00
    CARD:                 $0.00

04/17/2015

1 SUBI KOONER, an individual; RAMESHBHAI M. PATEL, an Individual; DSA ENTERPRISES LP, a
2 Tennessee Limited Partnership; ATHENA MANAGEMENT, LP, a Limited Partnership;
3 MAHENDRA R. BHAKTA, as Trustee Of Mahendra R. Bhakta Family Trust; KANU R.
4 HIRA, as Trustee Of Hira Family Trust; DAXABEN HIRA, as Trustee Of Hira Family
5 Trust; RAJU PATEL, an individual and as Trustee Of The Patel Family Trust 2/10/2000,; SBPH LLC,
6 a California Limited Liability Company; DEVENDRA M. PATEL, as Trustee Of Patel
7 Family Living Trust; GITA D. PATEL, as Trustee Of Patel Family Living Trust; DILIP J. PATEL, an
8 Individual; CARLOS PALACIOS JR., an Individual; ANAND K. PATEL, an Individual;
9 NAYNA UMESH PATEL, an Individual; NATVERLAL D. PATEL, an Individual; SWATI
10 R. PATEL, an Individual; MAHESH KISAN, an Individual; HARSHAKANT KISAN, an Individual;
11 URMISHA PATEL, an Individual; PRABHAVATI J. PATEL, an Individual; GITA V. PATEL, as
12 Trustee Of Patel 2007 Trust; ATUL PATEL, an Individual; DIPAKBHAI J. PATEL, an Individual;
13 HIREN P. PATEL, an Individual; DEEPAK SANT, an Individual; NILIMA SANT, an Individual;
14 BHUPEN N. PATEL, an Individual; RAKESH J. PATEL, an Individual; PAYAL PATEL, an
15 Individual; KUNAL PATEL, an Individual; NIRU PATEL, an Individual; ALOK KALE, an
16 Individual; VENKAT MEMULA, an Individual; KRISTIN MEMULA, an Individual; NAYNA
17 PATEL, an Individual; SIRISH MAKAN, an Individual;
18
19
20
21          *Plaintiffs,*
22          vs.
23 JAMES PREIMESBERGER, an individual; KEITH SIMPSON, an individual; MERIDIAN
24 HEALTH SERVICES HOLDINGS, INC., a California Corporation; MERIDIAN HEALTH
25 SERVICES HOLDINGS, LLC, a California Limited Liability Company; MERIDIAN
26 HEALTH SERVICES CORPORATION, a California Corporation; FORESIGHT
27 MANAGEMENT SERVICES, LLC, a California Limited Liability Company; MERIDIAN
28

04/17/2015

---

**COMPLAINT**

| | |
|---|---|
| 1 | FORESIGHT MASTER TENANT, LLC, a California Limited Liability Company; |
| 2 | NORTHGATE CARE CENTER, INC., a California Corporation; and DOES 1 through 10, |
| 3 | inclusive |
| 4 | *Defendants.* |
| 5 | |
| 6 | |

COMPLAINT

## COMPLAINT

Plaintiffs Lingagoud Memula, Ashish Patel, Gunvantbhai B. Patel, Ashay Kale, Uma Kale, Pankaj Patel, Rajendra B. Makan, Piyush Patel, Sharmi Patel, Ashvin Chhana, Viren Dahya, Atul Kumar, Bhavna Mehta, Bakul Mehta, Dhanji Patel, Babubhai Patel, Bhavna Patel, Anju Patel, Dipak T. Patel, Hasmukhlal Patel, Jaya T. Patel, Jignesh Patel, Kisan Mahendra Chhotalal, Manisha Mahendra Chhotalal, Padmaben Patel, Pramod B. Patel, Daksha P. Patel, Pravin Patel, Yogita Patel, Yogesh N. Patel, Roopa Patel, Suresh R. Patel, Suresh Patel, Karanjit Kooner, Subi Kooner, Rameshbhai M. Patel, DSA Enterprises LP, Athena Management, LP, Mahendra R. Bhakta, Kuna R. Hira, Daxaben Hira, Raju Patel, SBPH LLC, Devendra M. Patel, Gita D. Patel, Dilip J. Patel, Carlos Palacios Jr., Anand K. Patel, Nayna Umesh Patel, Natverlal D. Patel, Swati R. Patel, Mahesh Kisan, Harshakant Kisan, Urmisha Patel, Prabhavati J. Patel, Gita V. Patel, Atul Patel, Dipakbhai J. Patel, Hiren P. Patel, Deepak Sant, Nilima Sant, Bhupen N. Patel, Rakesh J. Patel, Payal Patel, Kunal Patel, Niru Patel, Alok Kale, Venkat Memula, Kristin Memula, Nayna Patel, and Sirish Makan (collectively "Plaintiffs") allege on information and belief as follows:

## PARTIES

1.      Plaintiff Lingagoud Memula ("Memula") is an individual residing in Alameda County, in the state of California.  On January 31, 2008, Plaintiff Memula paid Defendants $490,000.00 in exchange for forty (40) units of Corporate Bonds and forty (40) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

2.      Plaintiff Ashish Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Ashish Patel paid Defendants $735,000.00 in

exchange for sixty (60) units of Corporate Bonds and sixty (60) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

3.      Plaintiff Gunvantbhai B. Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Gunvantbhai B. Patel paid Defendants $612,500.00 in exchange for fifty (50) units of Corporate Bonds and fifty (50) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

4.      Plaintiffs Ashay Kale and Uma Kale are husband and wife residing in Alameda County, in the state of California.  On January 31, 2008, Plaintiffs Ashay Kale and Uma Kale paid Defendants $245,000.00 in exchange for twenty (20) units of Corporate Bonds and twenty (20) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

5.      On or about August 15, 2008, Plaintiffs Ashay Kale and Uma Kale paid Defendants $100,000.00 in exchange for ten (10) debentures in Meridian Health Services Holdings LLC.  On or about March 15, 2011, Plaintiffs Ashay Kale and Uma Kale paid Defendants an additional $200,000.00 in exchange for twenty (20) debentures in Meridian Health Services Holdings, Inc.

6.      On or about March 25, 2011, Plaintiffs Ashay Kale and Uma Kale on behalf of Meridian Health Services Holdings, LLC agreed to and executed a promissory note in the amount of $200,000.00 for the benefit of Defendants Northgate Care Center, Inc. and Meridian Health Services Holdings, Inc..

7.      Plaintiff Pankaj Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Pankaj Patel paid Defendants $245,000.00 in exchange for twenty (20) units of Corporate Bonds and twenty (20) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

-2-
COMPLAINT

8.    Plaintiff Rajendra B. Makan is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Rajendra B. Makan paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

9.    On or about February 11, 2008, Plaintiff Rajendra B. Makan paid Defendants $100,000.00 in exchange for ten (10) debentures in Meridian Health Services Holdings, Inc..

10.    Plaintiffs Piyush Patel and Sharmi Patel are husband and wife residing in Orange County, in the state of California.  On January 31, 2008, Plaintiffs Piyush Patel and Sharmi Patel paid Defendants $140,875.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

11.    Plaintiff Ashvin Chhana is an individual residing in Johnson County, in the state of Texas.  On March 31, 2008, Plaintiff Ashvin Chhana paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

12.    Plaintiff Viren Dahya is an individual residing in Los Angeles County, in the state of California.  On May 31, 2010, Plaintiff Viren Dahya paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

13.    Plaintiff Atul Kumar is an individual residing in Davidson County, in the state of Tennessee.  On January 31, 2008, Plaintiff Atul Kumar paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

14.   On or about December 2008, Plaintiff Atul Kumar paid Defendants $150,000.00 in exchange for fifteen (15) debentures in Meridian Health Services Holdings, Inc.

15.   Plaintiffs Bhavna Mehta and Bakul Mehta are husband and wife residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiffs Bhavna Mehta and Bakul Mehta paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

16.   Plaintiff Dhanji Patel is an individual residing in Williamson County, in the state of Tennessee.  On January 31, 2008, Plaintiff Dhanji Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

17.   Plaintiff Babubhai Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Babubhai Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

18.   Plaintiff Bhavna J. Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Bhavna J. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

19.   Plaintiff Anju Patel is an individual residing in Orange County, in the state of California.  On January 31, 2008, Plaintiff Anju Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

- 4 -
COMPLAINT

20.    Plaintiff Dipak T. Patel is an individual residing in Orange County, in the state of California. On January 31, 2008, Plaintiff Dipak T. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

21.    Plaintiff Hasmukhlal Patel is an individual residing in Riverside County, in the state of California. On January 31, 2008, Plaintiff Hasmukhlal Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

22.    Plaintiff Hasmukhlal Patel paid Defendants $20,000.00 in exchange for two (2) debentures in Meridian Health Services Holdings, Inc.

23.    Plaintiff Jaya Patel is an individual residing in Los Angeles County, in the state of California. On January 31, 2008, Plaintiff Jaya Patel and her late husband Thakor B. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

24.    Plaintiff Jignesh Patel is an individual residing in Los Angeles County, in the state of California. On January 31, 2008, Plaintiff Jignesh Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

25.    Plaintiff Kisan Mahendra Chhotalai is an individual residing in Pasco County, in the state of Florida. On January 31, 2008, Plaintiff Kisan Mahendra Chhotalal paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

26.     Plaintiff Manisha Mahendra Chhotalal is an individual residing in Pasco County, in the state of Florida.  On January 31, 2008, Plaintiff Manisha Mahendra Chhotalal paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

27.     Plaintiff Padmaben Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Padmaben Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

28.     Plaintiff Pramod B. Patel is an individual residing in Gibson County, in the state of Tennessee.  On May 31, 2011, Plaintiff Pramod B. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

29.     Plaintiff Daksha P. Patel is an individual residing in Gibson County, in the state of Tennessee.  On May 31, 2011, Plaintiff Daksha P. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

30.     Plaintiffs Pravin Patel and Yogita Patel are individuals residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiffs Ravin Patel and Yogita Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

31.     On or about December 2008, Plaintiffs Pravin Patel and Yogita Patel paid Defendants $30,000.00 in exchange for three (3) debentures in Meridian Health Services Holdings, Inc.

- 6 -
COMPLAINT

32.    Plaintiff Raju Patel is an individual residing in Orange County, in the state of California. On May 31, 2010, Plaintiff Raju Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

33.    Plaintiff Yogesh N. Patel and Roopa Patel are husband and wife residing in Fort Bend County, in the state of Texas. On February 29, 2008, Plaintiffs Yogesh N. Patel and Roopa Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

34.    Plaintiff Suresh R. Patel is an individual residing in Los Angeles County, in the state of California. On February 28, 2008, Plaintiff Suresh R. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

35.    Plaintiff Suresh Patel is an individual residing in Los Angeles County, in the state of California. On January 31, 2008, Plaintiff Suresh Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

36.    Plaintiffs Karanjit Kooner and Subi Kooner are husband and wife residing in Collin County, in the state of Texas. On January 31, 2008, Plaintiffs Karanjit Kooner and Subi Kooner paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

37.    Plaintiff Rameshbhai M. Patel is an individual residing in Saline County, in the state of Arkansas. On January 31, 2008, Plaintiff Rameshbhai M. Patel paid Defendants

- 7 -
COMPLAINT

1   $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A"

2   Preferred Stock in Meridian Health Services Holdings, Inc.

3       38.   Plaintiff DSA Enterprises, LP is a limited partnership doing business in Maury

4   County, in the state of Tennessee, with its principal place of business at 1544 Bear Creek Pike,

5   Columbia, Tennessee 38401. On January 31, 2008, Plaintiff DSA Enterprise LP paid

6   Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of

7

8   Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

9       39.   Plaintiff Athena Management, LP is a limited partnership doing business in

10  Maury County, Tennessee. On January 31, 2008, Plaintiff Athena Management paid Defendants

11  $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A"

12  Preferred Stock in Meridian Health Services Holdings, Inc.

13      40.   Plaintiff Mahendra R. Bhakta is the trustee of the Mahendra R. Bhakta Family

14  Trust, dated July 2002. The Mahendra R. Bhakta Family Trust is a family living trust formed in

15  and under the laws of, the state of California.  The Mahendra R. Bhakta Family Trust, through

16

17  its trustee, paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and

18  ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

19      41.   Plaintiff Kanu R. Hira and Daxaben Hira are the co-trustees of the Hira Family

20  Trust, dated October 1993. The Hira Family Trust was formed in and under the laws of, the

21  state of California. The Hira Family Trust, through its co-trustees Plaintiffs Kanu R. Hira and

22  Daxaben Hira, paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds

23

24  and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

25      42.   Plaintiff Raju Patel is the trustee of the Patel Family Trust 2/10/2000, dated

26  February 10, 2000. The Patel Family Trust 2/10/2000 was formed in and under the laws of, the

27

28

- 8 -
COMPLAINT

state of California. Patel Family Trust 2/10/2000, through its trustee Plaintiff Raju Patel, paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

43.     Plaintiff SBPH LLC is a limited liability company doing business in Orange County, California, with its principal place of business at 960 North Tustin Street, Suite 323, Orange, California 92867.  On January 31, 2008, Plaintiff SBPH LLC paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

44.     Plaintiffs Devendra M. Patel and Gita D. Patel are co-trustees of the Patel Family Living Trust, dated October 28, 1993.  The Patel Family Living Trust was formed in and under the laws of, the state of California.  The Patel Family Living Trust, through its co-trustees Plaintiffs Devendra M. Patel and Gita D. Patel, paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

45.     Plaintiff Dilip J. Patel is an individual residing in Santa Clara County, in the state of California.  On June 23, 2008, Plaintiff Dilip J. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

46.     Plaintiff Carlos Palacios Junior is an individual residing in Orange County, in the state of California.  On February 29, 2008, Plaintiff Carlos Palacios Junior paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

- 9 -
COMPLAINT

47.     Plaintiff Anand K. Patel is an individual residing in Orange County, in the state of California.  On January 31, 2008, Plaintiff Anand K. Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

48.     Plaintiff Nayna Umesh Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Nayna Umesh Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

49.     Plaintiff Natverlal Patel is an individual residing in Tarrant County, in the state of Texas.  On April 31, 2011, Plaintiff Natverlal Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

50.     Plaintiff Swati R. Patel is an individual residing in Rutherford County, in the state of Tennessee.  On January 31, 2008, Plaintiff Swati R. Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

51.     On or about December 2008, Plaintiff Swati R. Patel paid Defendants $50,000.00 in exchange for five (5) debentures in Meridian Health Services Holdings, Inc.

52.     Plaintiff Mahesh Kisan is an individual residing in Davidson County, in the state of Tennessee.  On January 31, 2008, Plaintiff Mahesh Kisan paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

53.     Plaintiff Harshakant Kisan is an individual residing in Davidson County, in the state of Tennessee.  On January 31, 2008, Plaintiff Harshakant Kisan paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

54.     Plaintiff Urmisha Patel is an individual residing in San Diego County, in the state of California.  On January 31, 2008, Plaintiff Urmisha Patel's mother Nirmala Vallabh paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

55.     On or about December 2008, Plaintiff Urmisha Patel's mother Nirmala Vallabh paid Defendants $20,000.00 in exchange for two (2) debentures in Meridian Health Services Holdings, Inc.

56.     Plaintiff Urmisha Patel's mother Nirmala Vallabh passed away and the Corporate Bonds, Series "A" Preferred Stock and Debentures in Meridian Health Services Holdings, Inc. were transferred to Plaintiff Urmisha Patel.

57.     Plaintiff Prabhavati J. Patel is an individual residing in Orange County, in the state of California.  On January 31, 2008, Plaintiff Prabhavati J. Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

58.     On or about December 2008, Plaintiff Prabhavati J. Patel paid Defendants $30,000.00 in exchange for three (3) debentures in Meridian Health Services Holdings, Inc.

59.     Plaintiff Gita V. Patel is the trustee of the Patel 2007 Trust.  The Patel 2007 Trust was formed in and under the laws of, the state of California.  The Patel 2007 Trust, through its trustee Plaintiff Gita V. Patel, paid Defendants $61,250.00 in exchange for five (5) units of

- 11 -
COMPLAINT

Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

60.     Plaintiff Atul Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Atul Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

61.     Plaintiff Dipakbhai J. Patel is an individual residing in Orange County, in the state of California.  On December 26, 2009, Plaintiff Dipakbhai J. Patel paid Defendants $61,250.00 in exchange for five (5) units of Corporate Bonds and five (5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

62.     Plaintiff Hiren P. Patel is an individual residing in Los Angeles County, in the state of California.  On January 31, 2008, Plaintiff Hiren P. Patel paid Defendants $30,625.00 in exchange for two and a half (2.5) units of Corporate Bonds and two and a half (2.5) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

63.     Plaintiffs Deepak Sant and Nilima Sant are husband and wife residing in Alameda County, in the state of California.  On January 31, 2008, Plaintiffs Deepak Sant and Nilima Sant paid Defendants $24,500.00 in exchange for two (2) units of Corporate Bonds and two (2) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

64.     Plaintiff Bhupen N. Patel is an individual residing in Rutherford County, in the state of Tennessee.  Plaintiff Bhupen N. Patel paid Defendants $122,500.00 in exchange for ten (10) units of Corporate Bonds and ten (10) units of Series "A" Preferred Stock in Meridian Health Services Holdings, Inc.

- 12 -
COMPLAINT

65.     Plaintiff Rakesh J. Patel is an individual residing in San Diego County, in the state of California.  On or about June 2008, Plaintiff Rakesh J. Patel paid Defendants $20,000.00 in exchange for two (2) debentures in Meridian Health Services Holdings, Inc.

66.     Plaintiff Payal Patel is an individual residing in San Mateo County, in the state of California.  On or about January 2011, Plaintiff Payal Patel paid Defendants $10,000.00 in exchange for one (1) debenture in Meridian Health Services Holdings, Inc.

67.     Plaintiff Kunal Patel is an individual residing in San Mateo County, in the state of California.  On or about January 2011, Plaintiff Kunal Patel paid Defendants $10,000.00 in exchange for one (1) debenture in Meridian Health Services Holdings, Inc.

68.     Plaintiff Niru Patel is an individual residing in Orange County, in the state of California.  On or about March 2011, Plaintiff Niru Patel paid Defendants $40,000.00 in exchange for four (4) debentures in Meridian Health Services Holdings, Inc.

69.     Plaintiff Alok Kale is an individual residing in Alameda County, in the state of California.  On or about March 2011, Plaintiff Alok Kale paid Defendants $100,000.00 in exchange for ten (10) debentures in Meridian Health Services Holdings, Inc.

70.     Plaintiffs Venkat Memula and Kristin Memula are husband and wife residing in Alameda County, in the state of California.  On or about March 2011, Plaintiffs Venkat Memula and Kristin Memula paid Defendants $100,000.00 in exchange for ten (10) debentures in Meridian Health Services Holdings, Inc.

71.     Plaintiff Nayna Patel is an individual residing in Los Angeles County, in the state of California.  On or about August 11, 2008, Plaintiff Nayna Patel's ex-husband, Suresh Patel, paid Defendants $100,000.00 in exchange for ten (10) debentures in Meridian Health Services

- 13 -
COMPLAINT

Holdings, Inc. On or about 2011, Suresh Patel transferred said debentures to Plaintiff Nayna Patel, pursuant to the terms of her divorce.

72. Plaintiff Sirish Makan is an individual residing in Los Angeles County, in the state of California. On or about February 11, 2008, Plaintiff Sirish Makan paid Defendants $20,000.00 in exchange for two (2) debentures in Meridian Health Services Holdings, Inc.

73. Plaintiffs are informed and believe that Defendant James Preimesberger ("Preimesberger") is an individual residing in Los Angeles, California. Defendant Preimesberger is an attorney licensed to practice law in the state of California.

74. Plaintiffs are informed and believe that Defendant Keith Simpson ("Simpson") is an attorney licensed to practice law in the state of California currently residing in Los Angeles, California.

75. Plaintiffs are informed and believe that Defendant Meridian Health Services Holdings, Inc. ("Meridian Holdings") is a California Corporation, with its principal place of business in Los Angeles, California.

76. Plaintiffs are informed and believe that Defendant Meridian Health Services Holdings, LLC. ("Meridian Holdings LLC") is a California Limited Liability Company, with its principal place of business in Los Angeles, California.

77. Plaintiffs are informed and believe that Defendant Foresight Management Services, LLC ("Foresight") is a California Limited Liability Company, with its principal place of business in Los Angeles, California.

78. Plaintiffs are informed and believe that Defendant Meridian Foresight Master Tenant, LLC ("Meridian Foresight Tenant") is a California Limited Liability Company, with its principal place of business in Los Angeles, California.

- 14 -
COMPLAINT

79.     Plaintiffs are informed and believe that Defendant Northgate Care Center, Inc., is a California Corporation, with its principal place of business in San Rafael, California.

80.     Plaintiffs are informed and believe that Preimesberger is the officer, director and shareholder of Meridian Holdings and is in complete control of Meridian Holdings.

81.     Plaintiffs are informed and believe that Preimesberger is an officer, director and shareholder of Foresight Management Services, and is in complete control of Foresight Management Services.

82.     Plaintiffs are informed and believe that Preimesberger individually and on behalf of Meridian Holdings, made various fraudulent and deceptive representations alleged in this Complaint to Plaintiffs in order to induce them to invest their funds in Meridian Holdings.

83.     Plaintiff is ignorant of the true names or capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and based upon such information and belief, alleges that each defendant designated by such fictitious names is in some way responsible for the obligations, events, acts, omissions, conduct, wrongdoing, injuries and damages hereinafter alleged.  Wherever the term Defendants is used in this Complaint, it shall be defined to include the fictitiously named defendants as well.

84.     Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein, each of the Defendants, including those named fictitiously, was and now is the agent, servant, employee, representative and alter ego of the remaining defendants and was at all times mentioned in this Complaint, acting within the course and scope of his authority as

- 15 -
COMPLAINT

1   such agent, servant, employee, representative and alter ego, with permission and consent of the

2   remaining Defendants.

3       85.     Plaintiffs are informed and believe, and upon such information and belief, allege

4   that each of the Defendants was, at all times herein mentioned, acting in concert with, aiding and

5   abetting, and acting in conspiracy with, each and every one of the remaining Defendants.

6

7       86.     Plaintiffs are informed and believe, and upon such information and belief, allege

8   that that Preimesberger and DOES 1 through 20 (collectively the "Alter Ego Defendants") are at

9   all times herein mentioned were, members, promoters of the various entities.  There exists, and

10  at all times herein mentioned existed, a unity of interests between the Alter Ego Defendants and

11  the Entities such that any individual and separateness between the Alter Ego Defendants and the

12  LLC have ceased, and the Alter Ego Defendants are Alter Egos of the entities as follows:

13      A.     MERIDIAN HEALTH SERVICES HOLDINGS, INC.;

14

15      B.     MERIDIAN HEALTH SERVICES HOLDINGS, LLC;

16      C.     FORESIGHT MANAGEMENT SERVICES, LLC;

17      D.      MERIDIAN FORESIGHT MASTER TENANT, LLC.

18      E.     NORTHGATE CARE CENTER, INC.

19      87.     Additionally, Preimesberger is the Alter Ego of MERIDIAN HEALTH

20  SERVICES HOLDINGS, INC and MERIDIAN HEALTH SERVICES HOLDINGS, LLC

21  because at all times he has exercised complete dominion and control over these two entities as

22  follows:

23

24      A.) Preimesberger disregarded all proper forms and procedures for operating the entities,

25  and treated Meridian Holdings and Meridian Holdings, LLC assets as his own.  Upon

26  information and belief, for all practical purposes the property and actions of Meridian Holdings

27

28                                    - 16 -
                                    COMPLAINT

and Meridian Holdings LLC are the property and actions of Preimesberger. Upon information and belief, Preimesberger used all these companies interchangeably and for his own personal fraudulent purposes and to perpetrate fraud under as many confusing business names as possible, in order to make it more difficult for the public to identify and seek redress for the fraud perpetrated by Preimesberger.

B.) Upon information and belief, some of the companies under which Preimesberger purported to conduct business were never incorporated. Upon information and belief, the entities have interlocking officers, directors and employees and further share business addresses and facilities. Upon information and belief, funds for each of these companies have been intermingled and commingled with one another and with the funds of Preimesberger. Plaintiffs are informed and believe and thereon allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendant Preimesberger and Meridian Holdings Meridian Holdings, LLC and Preim Health, such that any individuality and separateness between Defendant

C.) Preimesberger, Meridian Holdings and Meridian Holdings LLC have ceased, and the entities are alter egos of Defendant Preimesberger in that:

i.) the companies were, and at all times herein mentioned mere shells, instrumentalities, and conduits through which Defendants Preimesberger, Meridian Holdings and Meridian Holdings LLC have conducted their business in exactly as they had conducted it previous to incorporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness between Defendants Preimesberger, Meridian Holdings and Meridian Holdings LLC and Preimesberger does not, and at all times herein mentioned did not, exist;

ii.) Controlled, dominated, and operated by Defendant Preimesberger as his business and alter ego, in that the activities and business of Meridian Holdings, Meridian Holdings LLC and Preimesberger were carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceedings were maintained, and Defendant Preimesberger entered into transactions with Meridian Holdings, Meridian Holdings, LLC and third parties without the approval of other partners, directors or shareholders; and Completely controlled, dominated, managed, and operated Meridian Holdings and Meridian Holdings, LLC; and

iii.) Preimesberger intermingled the assets of the entities to suit his convenience by placing the fixed assets of Meridian Holdings, Meridian Holdings, LLC and other companies in the name of Defendant Preimesberger in order to evade obligations owed by the entity Defendants herein to Plaintiffs.

88.    As a result of the acts, omissions complained herein, the Defendants and the Alter Ego Defendants are jointly and severally liable for all relief sought herein against the Defendants by the Plaintiffs.

## JURISDICTION AND VENUE

89.    The acts, omissions, conduct and wrongdoing hereinafter described occurred, in the County of Los Angeles. The contract hereinafter described is governed by the laws of the State of California and provides that the Courts of California shall have exclusive jurisdiction over any dispute.

90.    In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications and email.

- 18 -
COMPLAINT

## NATURE OF ACTION

91.     This action arises out of the brazen fraud committed by Preimesberger, Simpson and the related entities and its officers, directors, successors and Alter Egos. Through which the Plaintiffs were swindled and cheated out of approximately fourteen million five hundred eighty five thousand six hundred thirty nine dollars ($14,585,639.00).  In reasonable reliance on numerous written and oral misstatements made by Defendants, Plaintiffs executed numerous written agreements and made cash payments totaling eight million eight hundred sixty five thousand, three hundred sixty five dollars ($8,865,365.00) in exchange for Preferred Stock Shares and Corporate Bonds, Debenture and Promissory Notes.

92.     Defendants represented that these funds would be used to purchase and expand Meridian Holdings by acquiring the company Foresight and expand the business of Meridian Holdings.

93.     Defendants further represented that Plaintiffs would receive a substantial return on their investments.  However, Defendants have misappropriated the money and transferred the various business assets in an attempt to loot the entities and defraud the Plaintiffs.

94.     Defendants had clear contractual, statutory and common law obligations to pay Plaintiffs back their investment and run the entities in a professional and competent manner.  In fact, Defendants on multiple occasions acknowledged their obligations to repay all of the Plaintiffs' money and made repeated assurances to Plaintiffs that Defendants would repay the entire amount with interest.  However, since 2011, Defendants have cease repaying Plaintiffs despite assurance that it would do so.

95.     Plaintiffs are informed on information and belief, that Defendants have now sold off the majority of the Defendant entities' business assets to a third party without informing the

- 19 -
COMPLAINT

1    Plaintiffs or seeking their approval.  Moreover, Defendants have begun transferring business

2    opportunities of Meridian Holdings to Meridian Holdings LLC in an attempt to prevent

3    Plaintiffs from recovering anything.

4         96.    Plaintiffs are informed on information and belief, that Defendants oversold the

5    Preferred Stocks, Corporate Bonds and Debentures as a means of raising capital to pay off initial

6    investors' returns.  Defendants Preimesberger and Simpson conspired to create an elaborate

7    Ponzi scheme to defraud the Plaintiffs by promising huge returns without any real way to pay it

8    back but for additional capital contribution from new stock, bond, note and debenture holders.

9         97.    Due to the sophistication and legal knowledge possessed by Preimesberger and

10   Simpson, who are both attorneys licensed by the state of California to practice law, they were

11   able to hide their deceptive and illegal practices from the Plaintiffs for a number of years.

12

13                        **GENERAL ALLEGATIONS**

14   **A.    Meridian Health Services Holding, Inc.**

15        98.    In 2007, Preimesberger formed Meridian Holdings.  Preimesberger is a

16   shareholder and the President, board member and CEO of Meridian Holdings.

17        99.    Keith Simpson is an attorney authorized to practice law in the state of California.

18        100.    At one point, Meridian Holdings owned and operated a number of subsidiary

19   entities, which provide management and rehabilitations services to nursing and assisted living

20   facilities.

21        101.    Due to the continued refusal to turn over records and documents to Plaintiffs,

22   Plaintiffs are unable to determine at this time how many subsidiaries are in existence and

23   operated by Defendants.

24

25

26

27

28
                              - 20 -
                           COMPLAINT

**B.      Preferred Stock and Bond Offering Meridian Health Services Holdings, Inc.**

102.      In or about 2008, Preimesberger began offering Preferred Stock and Corporate Bonds in Meridian Holdings to Plaintiffs.  Attached hereto and incorporated into this Complaint as Exhibit A is a true and correct copy of the Purchase Agreement for the Series "A" Preferred Stock and Corporate Bonds in Meridian Holdings ("Purchase Agreement").

103.      The purpose of this Preferred Stock and Corporate Bond Investment was to raise money for Meridian Holdings to purchase the company Foresight Management, LLC.

104.      In this offering, James and Meridian Holdings set the purchase price for one percent (one hundred (100) shares) of the Series "A" Preferred Stock at $22,500.00.

105.      Additionally, James and Meridian Holdings set the purchase price for one percent (ten (10) units) of the Corporate Bonds at $100,000.00.

106.      Plaintiffs were required to purchase like amounts of Series "A" Preferred Stock and Corporate Bonds.

107.      Pursuant to the terms of the Purchase Agreement, the Corporate Bonds carried a coupon rate of 12% per year from Meridian Holdings.

108.      Pursuant to the terms of the Purchase Agreement, the Series "A" Preferred Stock holders were entitled to up to sixty percent (60%) of the Dividends from the profit of Meridian Holdings.

109.      Pursuant to the terms of the Purchase Agreement, Meridian Holdings would appoint one to three Series "A" Preferred Stock Holders to the Board of Directors to Meridian Holdings.

110.      Pursuant to the terms of the Purchase Agreement, upon the sale of Meridian Holdings all Corporate Bonds and accrued interest will be paid to the Corporate Bond holders.

111.    Additionally, pursuant to the terms of the Purchase Agreement, after all the

Corporate Bonds and accrued interest has been paid, forty percent (40%) of the net sale proceeds

would be allocated to pay the Series "A" Preferred Stock Holders.

112.    To date, the Series "A" Stock and Corporate Bonds Plaintiffs invested

$7,025,375.00 with Meridian Holdings to purchase 5735 Series "A" Preferred Stock and 573.5

Corporate Bond Units in this offering.

113.    Interest and dividends were paid by Meridian Holdings to the Series "A" Stock

and Corporate Bond Plaintiffs until June 2011. In June 2011, Meridian Holdings ceased making

any payments.

114.    Since June 2011 and continuing until 2015, Defendants have made numerous

representations that it would repay the Series "A" Stock and Corporate Bonds.

115.    Moreover, Defendants made representations that it would repay the Plaintiffs

upon the sale of properties held by Meridian Holdings in 2012.  However, after the sale of the

properties in 2012, the Series "A" Stock and Corporate Bonds were not repaid.  In fact the

representation made by Defendants from 2012 until 2015 to the Plaintiffs all proved to be false.

116.    In reliance on these representations, Plaintiffs did not commence any litigation.

117.    As of April 13, 2015, Series "A" Stock and Corporate Bond Plaintiffs are owed

$12,348,444.00 in unpaid Series "A" Preferred Stock and Corporate Bond principal and interest.

118.    The Series "A" Stock and Corporate Bond Plaintiffs are also owed forty percent

(40%) of the net proceeds from the sale of the Meridian Holdings to a third party.

**B.    Debentures in Meridian Health Services Holdings, Inc.**

119.    Beginning in 2008 and ending until 2011, James and Meridian Holdings began

offering to Plaintiffs the opportunity to purchase debentures in Meridian Holding.  Attached

hereto and incorporated into this Complaint as Exhibit B is a true and correct copy of the Debenture Subscription Agreement.

120.    Pursuant to the terms of the Debenture Subscription Agreement, Meridian Holding was going to issue one thousand (1000) Debentures with a purchase price of ten thousand dollars ($10,000.00) per Debenture.

121.    Pursuant to the terms of the Debenture Subscription Agreement, Medirian Holding promised to pay each Debenture holder an annual interest rate of fourteen percent (14%).

122.    The Debenture Plaintiffs purchased 118 Debentures for a total investment amount of $1,180,000.00.

123.    Meridian Holding stopped making payments on the Debentures in 2011.

124.    Since 2011 and continuing until 2015, Defendants have made numerous representations that it would repay the Debentures so long as the investors did not initiate any lawsuits against Defendants and waited for the fortune of the companies to turn around.

125.    Moreover, Defendants made representations that it would repay the Plaintiffs upon the sale of properties in 2012.  However, after the sale of the properties in 2012, the debentures were not repaid.  These representations in 2012 and the following ones were all false.

126.    In reliance on these representations, Plaintiffs did not commence any litigation.

127.    As of April 9, 2015, Debenture Plaintiffs are owed $1,924,550.00 in outstanding interest payments and outstanding principle.

C.    **Promissory Note**

128.    On or about March 25, 2011, Defendants Preimesberger, Meridian Holding and NorthGate Care Center Inc. entered into a promissory note ("Note") with Plaintiffs Uma Kale

- 23 -
COMPLAINT

and Ashay Kale to borrow $200,000.00.   Attached hereto and incorporated into this Complaint

as Exhibit C is a true and correct copy of the March 25, 2011 Promissory Note.

129.   On or about March 2011, Defendants went into default on the Note by failing to

make payments to Plaintiffs Uma Kale and Ashay Kale.

130.   Despite repeated demands, Defendants continue to refuse to honor its obligations

under the Note.

131.   Defendants have made repeated assurance to Plaintiffs Uma Kale and Ashay

Kale that it would honor the Note.  However, these repeated assurances have proved to be false.

**D.     Defendants Continued Misconduct**

132.   Following the Sale of the five Properties to Abe Bak in 2012, Defendants began

shifting the assets of Meridian Holdings to a new entity he formed called Meridian Holdings,

LLC.

133.   Preimesberger began to divert corporate business and opportunity to Meridian

Holdings LLC in an attempt to cut of the capital to Meridian Holdings and force the Plaintiffs to

earn less money on their investments.

134.   On information and belief, and on that basis allege, that Preimesberger sold a

substantial portion of Meridian Holdings business to a third party entity without the consent of

the Shareholders, or the Plaintiffs.

135.   This sale was done under market value and for the sole benefit of Preimesberger

and his new entity Meridian Holding LLC.

136.   On information and belief, Plaintiffs allege, that Defendants hired an accountant

firm to assist in their fraud by creating fake or fraudulent corporate books and records, tax

information in an effort to hide the elaborate Ponzi scheme from the Plaintiffs.  Plaintiffs intend

- 24 -
COMPLAINT

to amend the Complaint with the names of the individuals who assisted the Defendants in

perpetrating this brazen "Madoff-esque" scheme on the Plaintiffs.

### FIRST CAUSE OF ACTION
(BREACH OF CONTRACT– PREFERRED STOCK AGREEMENTS AGAINST ALL DEFENDANTS)

137.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation

set forth in Paragraphs 1 through 136, inclusive, of this Complaint as though fully set forth at

this place.

138.    Beginning in 2007 and continuing until 2011, Preferred Stock and Corporate

Bond Plaintiffs and Defendants entered into Preferred Stock Agreement to purchase Preferred

Stock and Corporate Bonds in Meridian Holding, which are binding written contracts. See

Exhibit A.

139.    On or about 2011, Defendants breached the Preferred Stock Agreements by

failing to comply with the terms of the Preferred Stock Agreement.

140.    Preferred Stock and Corporate Bond Plaintiffs have performed all of their

obligations under the Preferred Stock Agreements, except those obligations that were excused

by the conduct and material breaches of the Defendants.

141.    The Defendants Breach of the Preferred Stock Agreements directly and

proximately caused damage to Preferred Stock and Corporate Bond Plaintiffs in the amount to

be proven at trial, but no less than amounts Preferred Stock and Corporate Bond Plaintiffs paid

for the Preferred Stocks and Corporate Bonds that have not been paid by Defendants plus any

other relief that the Court deems just and proper.

142.    For the reasons set forth above, the Alter Ego Defendants are liable to Plaintiffs

for the Defendants breaches of Preferred Stock Agreements.

**SECOND CAUSE OF ACTION**
(BREACH OF CONTRACT – DEBENTURE AGREEMENTS AGAINST ALL DEFENDANTS)

143.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 142, inclusive, of this Complaint as though fully set forth at this place.

144.    Beginning in 2008 and continuing until 2011, Debenture Plaintiffs and Defendants entered into Debenture Agreement, which are binding written contracts. See Exhibit B.

145.    In 2011, Defendants breached the Debenture Agreements by failing to comply with the terms of the Preferred Stock Agreement.

146.    Debenture Plaintiffs have performed all of their obligations under the Debenture Agreements, except those obligations that were excused by the conduct and material breaches of the Defendants.

147.    The Defendants breach of the Debenture Agreements directly and proximately caused damage to Debenture Plaintiffs in the amount to be proven at trial, but no less than amounts Debenture Plaintiff paid for the Debentures that have not been paid by Defendants plus any other relief that the Court deems just and proper.

148.    For the reasons set forth above, the Alter Ego Defendants are liable to Plaintiffs for the Defendants breaches of Debenture Agreements.

\\

\\

\\

**THIRD CAUSE OF ACTION**
(BREACH OF CONTRACT – PROMISSORY NOTE AGREEMENTS AGAINST ALL DEFENDANTS)

149.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 148, inclusive, of this Complaint as though fully set forth at this place.

150.    On or about, March 25, 2011 Plaintiffs Uma Kale and Ashay Kale entered into a Promissory Note Agreement with Defendants Meridian Holding and Northgate Care Center and Preimesberger, which is a binding written contract. See Exhibit C.

151.    In 2013, Defendants Meridian Holding and Northgate Care Center and Preimesberger breached the Promissory Note Agreement by failing to comply with the terms of the Promissory Note Agreement.

152.    Plaintiffs have performed all of their obligations under the Promissory Note Agreements, except those obligations that were excused by the conduct and material breaches of the Defendants.

153.    The Defendants breach of the Promissory Note Agreement directly and proximately caused damage to Plaintiffs in the amount to be proven at trial, but no less than amounts $240,000.00.

154.    For the reasons set forth above, the Alter Ego Defendants are liable to Plaintiffs for the Defendants breaches of Promissory Note Agreement.

**FOURTH CAUSE OF ACTION**
(FRAUD AGAINST ALL DEFENDANTS)

155.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 154, inclusive, of this Complaint as though fully set forth at this place.

- 27 -
COMPLAINT

156. Defendants made material misrepresentations, omitted material facts necessary to make statements not misleading, and/ or made promises that they did not intend to perform.

157. Specifically, Defendants made numerous representations that it would be able to make payments on the Corporate Bonds, Debentures and Promissory Notes.

158. At the time Defendants made their misrepresentations, omissions, and/or false promises, Plaintiffs were ignorant of the true facts and/or Defendants' secret intention not to perform.

159. Defendants had no intention to perform these obligations and instead used others investors capital to make the payments in a type of Ponzi scheme.

160. Plaintiffs could not, in the exercise of reasonable diligence, have discovered Defendants' misrepresentations, omissions, and/or secret intentions at the time they were made.

161. In reasonable reliance on Defendants' misrepresentations, omissions, and/or false promises, Plaintiffs purchased the Preferred Stocks, Debentures and Promissory Notes in the amount of approximately fourteen million five hundred eighty five thousand six hundred thirty nine dollars ($14,585,639.00)

162. Plaintiffs' reliance was foreseeable and was justified.

163. If Plaintiffs had known of the true facts and/or Defendants' actual intentions, Plaintiffs would not have purchased the Preferred Stocks, Debentures and Promissory Notes.

164. As a result of Defendants' misrepresentations, omissions, and/or false promises, Plaintiffs have been damaged in an amount to be proven at trial, but no less than fourteen million five hundred eighty five thousand six hundred thirty nine dollars ($14,585,639.00).

165. Plaintiffs are informed and believe, and thereupon allege, that Defendants' aforementioned acts were willful, malicious, outrageous, oppressive, and done in complete and

- 28 -
COMPLAINT

1  conscious disregard of the consequences they might have on Plaintiffs, and therefore justify

2  awarding Plaintiffs exemplary and punitive damages in an amount to be established at trial.

3
4
## FIFTH CAUSE OF ACTION
(NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)

5      166.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation

6  set forth in Paragraphs 1 through 166, inclusive, of this Complaint as though fully set forth at

7  this place.

8
9      167.    Defendants made represented that following the sale of the properties in 2012 to

   Abe Bak, Defendants would beginning making payments to Plaintiffs.
10

11     168.    Defendants new that these representations were not true.

12     169.    Defendants may have honestly believed that the representations were true,

13  Defendants had no reasonable grounds to believe that the representations were true when

14  Defendants made them.

15     170.    Defendants intended that Plaintiffs rely on their representations in agreeing to the

16  sale of the properties to Abe Bak in 2012.
17

18     171.    As a direct and proximate result of the aforementioned acts and conduct of

19  Defendants, Plaintiffs have been damaged in the amount of at least fourteen million five

20  hundred eighty five thousand six hundred thirty nine dollars ($14,585,639.00), herein a sum to

21  be determined according to proof and costs of suit incurred herein according to proof.

22     172.    Plaintiffs are informed and believe, and thereupon allege, that Defendants'

23  aforementioned acts were willful, malicious, outrageous, oppressive, and done in complete and

24  conscious disregard of the consequences they might have on Plaintiffs, and therefore justify

25  awarding Plaintiffs exemplary and punitive damages in an amount to be established at trial.
26

27

28

- 29 -
COMPLAINT

## SIXTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY AGAINST PREIMESBERGER AND SIMPSON)

173.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 173, inclusive, of this Complaint as though fully set forth at this place.

174.    As director, officer of the Meridian Holdings, Preimesberger and Simpson owed fiduciary duties of care, loyalty and good faith to the Plaintiffs.  Preimesberger's duties include obligations to exercise good business judgment, to act prudently in operation of Meridian Holdings' business, to discharge their actions in good faith, to act in the best interest of Meridian Holdings and Plaintiffs, and to put the interest of Meridian Holdings before their own.

175.    Preimesberger and Simpson breached his fiduciary duty of care by, among other things, routinely mismanaging Meridian Holding, and failing to comply with the terms of the governing corporate documents and applicable corporate law.

176.    Preimesberger and Simpson breached his duty of loyalty and good faith by, among other things, intentionally violating federal securities law, diverting corporate assets for the benefit of himself at the expense of the Meridian Holding and Plaintiffs, seeking to disenfranchise Plaintiffs.

177.    Plaintiffs have been damaged by the Preimesberger and Simpson's breach of their fiduciary duty.

178.    Plaintiffs are informed and believe, and thereupon allege, that Defendants' aforementioned acts were willful, malicious, outrageous, oppressive, and done in complete and conscious disregard of the consequences they might have on Plaintiffs, and therefore justify awarding Plaintiffs exemplary and punitive damages in an amount to be established at trial.

- 30 -
COMPLAINT

## SEVENTH CAUSE OF ACTION
(VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT AGAINST ALL DEFENDANTS)

179.   Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 178, inclusive, of this Complaint as though fully set forth at this place.

180.   Defendants, by the acts and conduct alleged herein above, did individually, and did conspire with one another and with others to, participate in a pattern of racketeering and in the unlawful theft and suppression of lawful competition.

181.   As a result of such conduct, Defendants have derived and received income that they have in turn used, invested or reinvested, in whole or in part, in the operation and perpetuation of, their unlawful business practices, coercion and intimidation of competition and suppression of business. Defendants conduct listed above constitutes a pattern of racketeering activity pursuant to 18 USC 1961 et seq.

182.   Defendants' activities affect interstate and/or foreign commerce.

183.   As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged and Defendants have been unjustly enriched.

184.   Plaintiff requests that this Court enter judgment against the Defendants, in an amount according to proof, for relief including actual damages, treble damages and attorneys' fees.

## EIGHTH CAUSE OF ACTION
(CONVERSION)

185.   Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 185, inclusive, of this Complaint as though fully set forth at this place.

- 31 -
COMPLAINT

186.   At all times herein mentioned, Plaintiffs were, and still are, entitled to the possession of the $ $8,987,865 they paid to Defendants in connection with the Preferred Stock, Debenture and Promissory Notes.

187.   Beginning in 2008 and continuing until 2011, Defendants took Plaintiffs' $ $8,987,865 and converted the same to their own use.

188.   On or about 2011, and continuing thereafter, Plaintiffs demanded the immediate return of their $8,987,865 plus interest earned for a total amount of $14,585,639.00. However, Defendants have failed and refused, and continue to fail and refuse, to return the money to Plaintiffs.

189.   The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify an award of exemplary and punitive damages.

## NINTH CAUSE OF ACTION
### (ACCOUNTING)

190.   Plaintiffs repeat, reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 190, inclusive, of this Complaint as though fully set forth at this place.

191.   The amount of damages owed to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of any and all profits and losses, debt, capital investments, and other receivables and liabilities of Defendants, and its divisions, subsidiaries, successors and/or assignees.  The amount of income owed to Plaintiffs shall be proven at time of trial.

192.   Plaintiffs have made requests that Defendants account for any and all profits, losses, debt, investments, salaries, budgets, and other financial information disclosing the assets,

- 32 -
COMPLAINT

1  profits and liabilities of Meridian Holdings and its divisions, subsidiaries, successors and/or

2  assignees.  Defendants have refused, and continue to refuse, to do so.

3     193.    Plaintiffs are entitled to an accounting of all money paid by Plaintiffs to the

4  Defendants, including all transfers and/or payments of such money to, or at the direction of, the

5  Alter Ego Defendants.

6

7                          **TENTH CAUSE OF ACTION**
                              (COMMON COUNTS)

8     194.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation

9  set forth in Paragraphs 1 through 193, inclusive, of this Complaint as though fully set forth at

10  this place.

11

12     195.    The Defendants became indebted to Plaintiffs within the past four years for

13  money had by Plaintiffs.

14     196.    $$8,987,865 which is the amount of money paid by Plaintiffs to the Defendants

15  (less any amounts refunded), is due and unpaid despite Plaintiffs' demand plus any other relief

16  the Court deems just and proper.

17

18     197.    For the reasons set forth above, including those allegations in paragraphs

19  Defendants are liable to Plaintiffs for their failure to repay Plaintiffs' money.

20                        **ELEVENTH CAUSE OF ACTION**
     (VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 et seq.)

21     198.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation

22  set forth in Paragraphs 1 through 197, inclusive, of this Complaint as though fully set forth at

23  this place.

24     199.    The acts of each and every Defendant, as herein alleged constitute unlawful

25  business practices in violation of California Business & Professions Code§ 17200, et seq., in

26

27                                 - 33 -
28                               COMPLAINT

that Defendants' actions constitute an attempt to restrain trade, to interfere with third party agreements, to mislead members of the public, to harm competition, and to harm the public at large by affecting competition.

200.    By reason of, and as a direct and proximate result of Defendants' violations, and as intended by Defendants, Plaintiff has sustained injury to its business and property as follows:

(a) Plaintiffs have lost profits it would have otherwise made;

(b) Plaintiffs have suffered a loss in the value of its business;

(c) Plaintiffs have suffered a loss of goodwill in the community, as well as damage to its professional reputation;

(d) Plaintiffs have lost potential for business growth, and

(e) Plaintiffs have lost business opportunity;

201.    Unless enjoined and restrained from continuing such unlawful business practices, Plaintiffs will continue to sustain damages as a result of the acts of each individual Defendants.

202.    The acts of each and every Defendant, as herein alleged, were willful, malicious and deliberate, and were taken with the knowledge that such acts would damage Plaintiffs in its business, professional reputation and goodwill.

203.    Plaintiffs have no adequate remedy at law or in equity for the acts of Defendants as described above, and is informed and believes and thereon allege that unless Defendants are restrained and enjoined from continuing in the unlawful business practices set forth in this Complaint, Plaintiff will continue to suffer damages.

204.    Plaintiff is therefore entitled to a decree from this Court that the acts set forth above were and are unfair acts of competition in violation of Business and Professions Code §17200; to a temporary restraining order and preliminary and permanent injunctions enjoining

- 34 -
COMPLAINT

Defendants from engaging in said unfair competitive acts and practice, and to full restitution to Plaintiffs of all funds acquired by means of any practices determined to constitute unfair competition by each individual Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, as follows:

1.    For general damages according to proof at the time of trial herein;

2.    For compensatory damages in an amount to be proven at trial;

3.    For treble damages, in an amount according to proof at the time of trial;

5.    For restitution, in an amount to be proven at trial;

6.    For an accounting of all money paid by Plaintiffs to Defendants, including all transfers and/or payments of such money to, or at the direction of, the Alter Ego Defendants;

7.    For the amount found due to Plaintiffs as a result of the accounting;

8.    For punitive damages on the claims for Fraud and Conversion;

9.    For interest at the legal rate permitted under California Law;

10.   For Injunctive Relief;

11.   For taxable costs of suit incurred herein;

12.   For reasonable attorneys' fees;

13.   For such other and further relief as may be just and proper.

DATED: April 17, 2015                  BRAUNSTEIN & BRAUNSTEIN, P.C.

By: _____

George G. Braunstein
Clark Anthony Braunstein
Annie Berlin
Attorneys for Plaintiffs

- 35 -
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lingagoud Memula, Ashish Patel, Gunvantbhai B. Patel, Ashay Kale, Uma Kale, Pankaj Patel, Rajendra B. Makan, Piyush Patel, Sharmi Patel, Ashvin Chhana, Viren Dahya, Atul Kumar, Bhavna Mehta, Bakul Mehta, Dhanji Patel, Babubhai Patel, Bhavna Patel, Anju Patel, Dipak T. Patel, Hasmukhlal Patel, Jaya T. Patel, Jignesh Patel, Kisan Mahendra Chhotalal, Manisha Mahendra Chhotalal, Padmaben Patel, Pramod B. Patel, Daksha P. Patel, Pravin Patel, Yogita Patel, Raju Patel, Yogesh N. Patel, Roopa Patel, Suresh R. Patel, Suresh Patel, Karanjit Kooner, Rameshbhai M. Patel, Dsa Enterprises LP, Athena Management, LP, Mahendra R. Bhakta, Kuna R. Hira, Daxaben Hira, Raju Patel, SBPH LLC, Devendra M. Patel, Gita D. Patel, Dilip J. Patel, Carlos Palacios Jr., Anand K. Patel, Nayna Umesh Patel, Natverlal D. Patel, Swati R. Patel, Mahesh Kisan, Harshakant Kisan, Urmisha Patel, Prabhavati J. Patel, Gita V. Patel, Atul Patel, Dipakbhai J. Patel, Hiren P. Patel, Deepak Sant, Nilima Sant, Bhupen N. Patel, Rakesh J. Patel, Payal Patel, Kunal Patel, Niru Patel, Alok Kale, Venkat Memula, Kristin Memula, Nayna Patel, and Sirish Makan

- 36 -
COMPLAINT

04/17/2015

# EXHIBIT A

# MERIDIAN HEALTH SERVICES HOLDINGS, INC.

## SERIES A PREFERRED STOCK AND CORPORATE BONDS

### PURCHASE AGREEMENT

THIS SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT (this "Agreement") is made for reference purposes as of November 30, 2007 by and among **MERIDIAN HEALTH SERVICES HOLDINGS, INC.**, a California corporation (the "Company"), and the investors listed on Schedule A hereto, each of which is herein referred to as an "Investor."

### RECITALS

**A.**    Whereas, the Company has a need to raise capital to grow the Company and acquire Foresight Management Services, LLC and its family of companies; and

**B.**    Whereas, the Investors desire to invest with the Company to assist the Company with its growth and potentially profit from such investment; and

**C.**    Whereas, the Company intends to offer Series A Preferred Stock and Corporate Bonds as a vehicle to raise capital; and

**D.**    Whereas, the Investors intend to purchase Series A Preferred Stock and Corporate Bonds subject to restrictions set forth below;

**E.**    Whereas, the Company is in the business of owning and operating nursing homes including skilled nursing facilities; and

**F.**    Now, Therefore, the parties agree as follows:

THE PARTIES HEREBY AGREE AS FOLLOWS:

1.    Purchase and Sale of Stock and Corporate Bonds.

    1.1    Sale and Issuance of Series A Preferred Stock and Long Term Bonds.

        (a)    The Company shall adopt and file with the Secretary of State of the State of California on or before the Initial Closing (as defined below) the Restated Articles of Incorporation (the "Restated Articles").

04/17/2015

1

(b)     On or prior to the Initial Closing, the Company shall have authorized (i) the sale and issuance to the Investors of the Series A Preferred Stock and (ii) non-convertible Corporate Bonds.  The Series A Preferred Stock shall have the rights, preferences, privileges and restrictions set forth in the Restated Articles.

(c)     Subject to the terms and conditions of this Agreement, each Investor agrees, severally and not jointly, to purchase at the relevant Closing and the Company agrees to sell and issue to each Investor at the relevant Closing, that number of shares of the Company's Series A Preferred Stock and the number of Corporate Bonds set forth opposite such Investor's name on Schedule A hereto for the purchase price set forth thereon.

1.2     Closings.

(a)     Initial Closing.  The initial purchase and sale of the shares of Series A Preferred Stock and Corporate Bonds set forth on Schedule A shall take place at the Law Offices of Keith F. Simpson, A Professional Corporation, at 10:00 a.m., on January 1, 2007, or at such other time and place as the Company and Investors agree to in writing (which time and place are designated as the "Initial Closing").

(b)     Subsequent Closings.  The Company may sell up to the balance of the authorized number of shares of Series A Preferred Stock and Corporate Bonds not sold at the Initial Closing to such purchasers as it shall select, at a price not less than the price per share paid at the Initial Closing.  Any such purchaser shall execute and deliver a counterpart signature page to, and thereby, without further action by any Investor, become a party to and be deemed an Investor under, this Agreement and any subsequent required agreements and all schedules and exhibits hereto and thereto shall automatically be updated to reflect such purchaser as a party hereto and thereto.  The subsequent purchases and sales of the Series A Preferred Stock and Corporate Bonds shall take place at the Law Offices of Keith F. Simpson, A Professional Corporation, at such time or at such other place as the Company and Investors acquiring those additional shares and Corporate Bonds sold pursuant hereto in each such subsequent purchase and sale mutually agree upon orally or in writing (which each such time and place are, together with the Initial Closing, are designated as a "Closing").

(c)     Delivery.  At each Closing, the Company shall deliver to each Investor a certificate representing the Stock that such Investor is purchasing as listed on Schedule A against payment of the purchase price therefore by check, wire transfer of immediately available funds to an account designated by the Company, cancellation of indebtedness, or any combination thereof.  In the event that payment by an Investor is made, in whole or in part, by cancellation of indebtedness, then such Investor shall surrender to the Company for cancellation at such Closing any evidence of such indebtedness or shall execute an instrument of cancellation in form and substance acceptable to the Company.

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

### 1.3    Sale Price, Dividends and Interest.

The Company is selling a combination of Corporate Bonds and Series A Preferred Stock. As set forth on Exhibit A, one percent of Corporate Bonds sell for $100,000.00 and one percent of Series A Preferred Stock sells for $22,500.00. Each Corporate Bond will sell for Ten-Thousand Dollars ($10,000). Therefore, for example, ten Corporate Bonds will sell for One-Hundred-Thousand Dollars ($100,000.00). The Corporate Bonds carry a coupon rate of 12%. The Corporate Bonds and Series A Preferred Stock must be purchase together in like increments. For example, if an Investor is purchasing one percent of Corporate Bonds the Investor must also purchase one percent of Series A Preferred Stock. Similarly, the Corporate Bonds and Series A Preferred Stock must be sold together in like amounts. For example, if an investor decides to sell one-half of his Corporate Bond holdings, the Investor must also sell one-half of his Series A Preferred Stock holdings. Corporate Bond interest payments must be paid before any dividends are paid to Investors. Any and all unpaid interest accrues and will be paid to the extent of the Company's ability to pay, or upon sale as noted below.

The Series A Preferred Stock holders shall be up to sixty percent (60%) of their dividends from the Company profit, upon Board of Director approval, only after Corporate Bond interest payments have been paid and Company taxes have been paid. The percentage of dividend payment can be higher at the discretion of the Board of Directors. Any remaining profit after interest, taxes and preferred dividends would be paid out to the Common Shareholders.

### 1.4    Sale of Series A Preferred Stock and Corporate Bonds

The Corporate Bonds may not be sold, redeemed, transferred or assigned to anyone except the Company. Investor understands and agrees that this is a long term investment. The Corporate Bonds may not be sold or redeemed to the Company until three years and ninety days from the purchase. In the event the Investor wants to sell the Corporate Bonds (and corresponding amount of Series A preferred Stock), the Investor must provide written notice, as set forth below, ninety (90) days prior to the date of sale. For example, if an Investor wants to sell the Investors Corporate Bonds and Series A Preferred Stock, and three years have elapsed since the purchase of the Series A Preferred Stock and Corporate Bonds, the Investor would provide notice of a sale at a date ninety days (or greater) to the Company's counsel. The sale will then occur upon the date specified by the Investor (assuming the date is ninety days or in excess of ninety days as set forth in the notice).

Upon sale of the Company, and after all Corporate Bonds and accrued interest have been redeemed by the Investors and paid for by the Company, the proceeds would be distributed in the following manner:

A)    Forty percent (40%) of the net sale proceeds would be allocated to pay the Series A Preferred Stock Holders in exchange for the Investors selling their Series A Preferred Stock to the Company.

3

   B) The remaining sixty percent (60%) of the  net sale proceeds would be allocated to the Common Stock Holders in exchange for the Common Stock Holders sale of their common stock.

  2. <u>Representations and Warranties of the Company</u>.  The Company hereby represents and warrants to each Investor the following:

   2.1 <u>Organization; Good Standing and Qualification</u>.

  The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of California and has all requisite corporate power and authority to carry on its business as now conducted.  The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure to so qualify would have a material adverse effect on its business or properties.

   2.2 <u>Capitalization and Voting Rights</u>.

  The authorized capital of the Company consists, or will consist immediately prior to the Initial Closing, of:

   (a) <u>Preferred Stock</u>.  Ten Thousand (10,000) shares of preferred stock will have a par value of Two-Hundred-Twenty-Five Dollars $225.00 (the "Preferred Stock"), of which (i) Ten Thousand (10,000) shares have been designated Series A Preferred Stock (the "Series A Preferred Stock"),.

   (b) <u>Common Stock</u>.  Ten Thousand (10,000) shares of Common stock which has already been sold and is not being offered for sale through this Agreement.

   (c) <u>Corporate Bonds</u>.  Corporate Bonds which are not convertible to shares with a Coupon Rate of Twelve Percent (12%).  One percent of the Corporate Bonds will be sold for One-Hundred-Thousand Dollars ($100,000.00).  The Corporate Bonds may not be sold, redeemed, transferred or assigned to anyone except the Company.

   (d) <u>Valid Issuance</u>.  The outstanding shares of Preferred Stock are all duly and validly authorized and issued, fully paid and nonassessable, and were issued in accordance with the registration or qualification provisions of the Securities Act of 1933, as amended (the "Act"), and any relevant state securities laws, or pursuant to valid exemptions therefrom.

   2.3 <u>Subsidiaries</u>.

   (a) The Company will own the following corporations:  Meridian Health Services Corporation, TY Five Star Corporation and Convalescent Center, Mission St., Inc.  A purchase will close with Vista Del Sol Health Services, Inc. upon issuance of licensure.  A

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

purchase is currently pending with Foresight Management Services, LLC and its family of companies.

(b)     The Company and Investors agree that the Company Officers must present all solicitations for nursing home purchases to the Company and allow the Company the first opportunity to purchase said nursing home.

Authorization.

All corporate action on the part of the Company, its officers, directors and shareholders necessary for the authorization, execution and delivery of this Agreement and any related agreements has been taken or will be taken prior to the Initial Closing. This Agreement constitutes valid and legally binding obligations of the Company, enforceable against the Company in accordance with their respective terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

2.4     Valid Issuance of Preferred Stock.

The shares of Series A Preferred Stock that is being purchased by the Investors hereunder, when issued, sold and delivered in accordance with the terms of this Agreement for the consideration expressed herein, will be duly and validly issued, fully paid, and nonassessable. The Series A Preferred Stock is restricted in the following manner and as set forth above.  1) The Series A Preferred Stock does not grant the shareholder any shareholder voting rights.  2) The Series A Preferred Stock is not freely marketable as there is no public market available for the sale, transfer or assignment of the securities which and may only be resold back to the Company upon approval by the Board of Directors.  The Company will appoint at least one and a maximum of three Investors to the Company Board of Directors.

2.5     Governmental Consents.

No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local governmental authority on the part of the Company is required in connection with the consummation of the transactions contemplated by this Agreement, except (i) the filing of the Restated Articles with the Secretary of State of the State of California and such other state securities filings as may be necessary, which filings will be timely effected after the relevant Closing.

2.6     Offering.

Subject in part to the truth and accuracy of each Investor's representations set forth in this Agreement, the offer, sale and issuance of the Series A Preferred Stock as contemplated by this Agreement are exempt from the registration requirements of the Act and will not result in a violation of the qualification or registration requirements of the California Law or other

5

applicable state securities laws, and neither the Company nor any authorized agent acting on its
behalf will take any action hereafter that would cause the loss of such exemption.

### 2.7    Lawsuits.

There is no action, suit, proceeding or investigation pending or, to the Company's
knowledge, currently threatened against the Company. The Company's subsidiary companies
have pending claims and litigation for which the Company believes it has insurance in force for
such coverage.

The Company has not admitted in writing its inability to pay its debts generally as they
become due, filed or consented to the filing against it of a petition in bankruptcy or a petition to
take advantage of any insolvency act, made an assignment for the benefit of creditors, consented
to the appointment of a receiver for itself or for the whole or any substantial part of its property,
or had a petition in bankruptcy filed against it, been adjudicated a bankrupt or filed a petition or
answer seeking reorganization or arrangement under any bankruptcy laws or any other similar
law or statute of the United States of America or any other jurisdiction.

### 2.8    Disclosure.

The Company shall provide each Investor with all the information that such Investor has
requested for deciding whether to purchase the Series A Preferred Stock and Corporate Bonds.

### 2.9    Registration Rights.

The Company has not granted or agreed to grant any registration rights to any person or
entity.

### 2.10    Tax Returns, Payments and Elections.

The Company has filed all tax returns and reports as required by law. These returns and
reports are true and correct in all material respects. The Company has paid all taxes and other
assessments due. The provision for taxes of the Company as shown in the Prospectus provided
to Investors is adequate for taxes due or accrued as of the date thereof. The Company has not
elected pursuant to the Internal Revenue Code of 1986, as amended (the "Code"), to be treated as
a Subchapter S corporation or a collapsible corporation pursuant to Section 1362(a) or Section
341(f) of the Code, nor has it made any other elections pursuant to the Code (other than elections
that relate solely to methods of accounting, depreciation or amortization) that would have a
material adverse effect on the Company, its financial condition, its business as presently
conducted or any of its properties or material assets. The Company has never had any tax
deficiency proposed or assessed against it and has not executed any waiver of any statute of
limitations on the assessment or collection of any tax or governmental charge. None of the
Company's federal income tax returns and none of its state income or franchise tax or sales or
use tax returns has ever been audited by governmental authorities. Since the date of the Financial
Statements, the Company has not incurred any taxes, assessments or governmental charges other
than in the ordinary course of business and the Company has made adequate provisions on its

6

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

books of account for all taxes, assessments and governmental charges with respect to its business, properties and operations for such period. The Company has withheld or collected from each payment made to each of its employees, the amount of all taxes (including, but not limited to, federal income taxes, Federal Insurance Contribution Act taxes and Federal Unemployment Tax Act taxes) required to be withheld or collected therefrom, and has paid the same to the proper tax receiving officers or authorized depositories.

2.11    Insurance.

The Company has in full force and effect fire and casualty insurance policies, with financially sound and reputable insurers, with extended coverage, sufficient in amount (subject to reasonable deductibles) to allow it to replace any of its material tangible properties that might be damaged or destroyed and in all other respects customary for similarly situated companies.

2.12    Labor Agreements and Actions; Employee Compensation.

Some of the Company's subsidiary corporations are bound by union labor agreements.

2.13    Investment Company.

The Company is not an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended.

2.14    Real Property Holding Company.

The Company is not a "real property holding company" within the meaning of Section 897 of the Code. The Company does hold options to purchase real property and first rights of refusal to purchase real property pursuant to a purchase contract with Foresight Management Services, LLC.

3.    Representations and Warranties of the Investors.

Each Investor, severally but not jointly, hereby represents and warrants to the Company that:

3.1    Authorization.

Such Investor has full power and authority to enter into this Agreement and such Agreement constitutes its valid and legally binding obligation, enforceable against it in accordance with its terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

7

### 3.2    Purchase Entirely for Own Account/No Sale.

The Series A Preferred Stock to be received by such Investor (collectively, the "Securities") and the Corporate Bonds ("Bonds") are being acquired for investment for such Investor's own account not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that such Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. The acquisition by each Investor of any of the Securities or Bonds shall constitute confirmation of the representation by each such Investor that such Investor does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to any of the Securities. Investors may not sell, transfer or assign the Securities and/or Bonds except upon approval by the Company Board of Directors. In such event, the Securities or Bonds may only be resold to the Company and not to any member of the public.

### 3.3    Disclosure of Information.

Such Investor believes it has received all the information it considers necessary or appropriate for deciding whether to purchase the Series A Preferred Stock and Corporate Bonds. Such Investor further represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of the Series A Preferred Stock and Corporate Bonds and the business, properties, prospects and financial condition of the Company. The foregoing, however, does not limit or modify the representations and warranties of the Company in Section 2 of this Agreement or the right of the Investors to rely thereon.

### 3.4    Investment Experience.

Such Investor acknowledges that any investment in Securities and Corporate Bonds involves a high degree of risk, and represents that it is able, without materially impairing its financial condition, to hold the Securities and Corporate Bonds for an indefinite period of time (minimum three years and ninety days) and to suffer a complete loss of its investment.

### 3.5    Accredited Investor; U.S. Persons; Non-U.S. Persons.

Such Investor is an "accredited investor" within the meaning of Securities and Exchange Commission ("SEC") Rule 501 of Regulation D, as presently in effect. If an Investor is a natural person resident in the United States, such Investor is an "accredited investor" within the meaning of Securities and Exchange Commission ("SEC") Rule 501 of Regulation D, as presently in effect. If an Investor is other than a natural person resident in the United States, such Investor (i) certifies that such Investor is not a "U.S. person" within the meaning of SEC Rule 902 of Regulation S, as presently in effect, and that such Investor is not acquiring the Securities for the account or benefit of any such U.S. person, (ii) agrees to resell the Securities only in accordance with the provisions of Regulation S, pursuant to registration under the Act, or pursuant to an available exemption from registration and agrees not to engage in hedging transactions with

8

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

regard to such Securities unless in compliance with the Act, (iii) agrees that any certificates for any Securities issued to such Investor shall contain a legend to the effect that transfer is prohibited except in accordance with the provisions of Regulation S, pursuant to registration under the Act or pursuant to an available exemption from registration and that hedging transactions involving such Securities may not be conducted unless in compliance with the Act, (iv) agrees that the Company is hereby required to refuse to register any transfer of any Securities issued to such Investor not made in accordance with the provisions of Regulation S, pursuant to registration under the Act, or pursuant to an available exemption from registration.

      3.6    <u>Restricted Securities</u>.

Such Investor understands that the Securities and Bonds it is purchasing are characterized as "restricted securities" under the federal securities laws inasmuch as they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may be resold without registration under the Act only in certain limited circumstances. In this connection, such Investor represents that it is familiar with SEC Rule 144, as presently in effect, and understands the resale limitations imposed thereby and by the Act. SUCH INVESTOR UNDERSTANDS AND ACKNOWLEDGES HEREIN THAT AN INVESTMENT IN THE COMPANY'S SECURITIES INVOLVES A SIGNIFICANT DEGREE OF RISK AND MAY RESULT IN A COMPLETE LOSS OF HIS, HER OR ITS INVESTMENT. Such Investor understands that the Securities have not been and will not be registered under the Act and have not been and will not be registered or qualified in any state in which they are offered, and thus the Investor will not be able to resell or otherwise transfer his, her or its Securities unless they are registered under the Act and registered or qualified under applicable state securities laws, or an exemption from such registration or qualification is available. Such Investor has no immediate need for liquidity in connection with this investment, does not anticipate that the Investor will be required to sell his, her or its Securities in the foreseeable future as set forth above.

      3.7    <u>Further Limitations on Disposition</u>.

      (a)    Without in any way limiting the representations set forth above, such Investor further agrees not to make any disposition of all or any portion of the Securities and/or Bonds.

      3.8    <u>Legends</u>.

It is understood that the certificates evidencing the Securities may bear one or all of the following legends:

      (a)    "THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE

9

COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT."

      (b)     Any legend required by the Bylaws of the Company or applicable state securities laws , including, without limitation, any legend required by the California Department of Corporations and Sections 417 and 418 of the California Corporations Code.

### 3.9    Reliance by Company.

Such Investor understands that the representations, warranties , covenants and acknowledgements set forth in this Section 3 constitute a material inducement to the Company entering into this Agreement.

### 3.10    No Reliance on Others.

Each Investor acknowledges that it is not relying upon any person, firm or corporation, other than the Company and its officers and directors, in making its investment or decision to invest in the Company. Each Investor agrees that no Investor nor any Investor's controlling persons, officers, directors, partners, agents, or employees of shall be liable to any other Investor for any action heretofore or hereafter taken or omitted to be taken by any of them in connection with the issuance and sale of the Series A Preferred Stock or Corporate Bonds.

### 4.    Conditions to Investors' Obligations at the Closing.

The obligations of each Investor under subsection 1.1(c) of this Agreement with respect to each Closing at which such Investor purchases any shares of Series A Preferred Stock hereunder are subject to the fulfillment on or before the Closing of each of the following conditions, the waiver of which shall not be effective against any Investor who does not consent thereto:

### 4.1    Representations and Warranties.

The representations and warranties of the Company contained in Section 2 shall be true on and as of the Closing with the same effect as though such representations and warranties had been made on and as of the date of such Closing.

### 4.2    Performance.

The Company shall have performed and complied with all agreements, obligations and conditions contained in this Agreement that are required to be performed or complied with by it on or before the Closing.

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

4.3   Representations and Warranties.

The representations and warranties of the Investor contained in Section 3 shall be true on and as of the Closing with the same effect as though such representations and warranties had been made on and as of the date of such Closing.

4.4   Payment of Purchase Price.

The Investor shall have delivered the purchase price specified in this Agreement for the number of shares of Series A Preferred Stock set forth opposite such Investor's name on Schedule A hereto.

5.   Miscellaneous.

5.1   Survival of Representations, Warranties and Covenants.

The warranties, representations and covenants of the Company and Investors contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and each Closing and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of the Investors or the Company.

5.2   Successors and Assigns.

Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties (including transferees of any Securities). Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

5.3   Governing Law; Venue.

This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties. All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in Los Angeles County in the State of California, and each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.

5.4   Waiver of Right to Jury Trial.

EACH OF INVESTORS AND THE COMPANY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION,

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

### 5.5    Acknowledgment; Waiver of Conflicts.

Each Investor acknowledges that: (a) it has read this Agreement; (b) it has been represented in the preparation, negotiation and execution of this Agreement by legal counsel of its own choice or has voluntarily declined to seek such counsel; and (c) it understands the terms and consequences of this Agreement and is fully aware of the legal and binding effect of this Agreement. Each Investor understands that the Company has been represented in the preparation, negotiation and execution of this Agreement by the Law Offices of Keith F. Simpson, A Professional Corporation, counsel to the Company, and that the Law Offices of Keith F. Simpson, A Professional Corporation has not represented any Investor or any stockholder, director or employee of the Company or any Investor in the preparation, negotiation and execution of this Agreement. Each Investor acknowledges that the Law Offices of Keith F. Simpson, A Professional Corporation, has in the past represented and is now or may in the future represent one or more Investors or their affiliates in matters unrelated to the transactions contemplated by this Agreement, including the representation of such Investors or their affiliates in matters of a nature similar to those contemplated by this Agreement. The Company and each Investor hereby acknowledges that it has had an opportunity to ask for and has obtained information relevant to such representation, including disclosure of the reasonably foreseeable adverse consequences of such representation, and hereby waives any conflict arising out of such representation with respect to the matters contemplated by this Agreement.

### 5.6    Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

### 5.7    Titles and Subtitles.

The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

### 5.8    Notices.

Except as may be otherwise provided herein, all notices, requests, waivers and other communications made pursuant to this Agreement shall be in writing and shall be conclusively deemed to have been duly given (a) when hand delivered to the other party; (b) when sent by facsimile to the number set forth below if sent between 8:00 a.m. and 5:00 p.m. recipient's local time on a business day, or on the next business day if sent by facsimile to the number set forth below if sent other than between 8:00 a.m. and 5:00 p.m. recipient's local time on a business day; (c) three business days after deposit in the U.S. mail with first class or certified mail receipt requested postage prepaid and addressed to the other party at the address set forth below; or (d) the next business day after deposit with a national overnight delivery service, postage prepaid,

12.

addressed to the parties as set forth below with next business day delivery guaranteed, provided that the sending party receives a confirmation of delivery from the delivery service provider. Each person making a communication hereunder by facsimile shall promptly confirm by telephone to the person to whom such communication was addressed each communication made by it by facsimile pursuant hereto but the absence of such confirmation shall not affect the validity of any such communication. A party may change or supplement the addresses given above, or designate additional addresses, for purposes of this Section by giving the other party written notice of the new address in the manner set forth above.

Send Company Notice as follows:

Law Offices of Keith F. Simpson, A Professional Corporation, 1230 Rosecrans Avenue, Suite 170, Manhattan Beach, California 90266; Facsimile (310) 297-9190.

5.9    Finder's Fee.

Each party represents that it neither is nor will be obligated for any finders' fee or commission in connection with this transaction. Each Investor agrees to indemnify and to hold harmless the Company from any liability for any commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which such Investor or any of its officers, partners, employees or representatives is responsible. The Company agrees to indemnify and hold harmless each Investor from any liability for any commission or compensation in the nature of a finder's fee (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

Amendments and Waivers.

Subject to the provisions of this Agreement, any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company as determined by the Board of Directors. Any amendment or waiver effected in accordance with this paragraph shall be binding upon each holder of any securities purchased under this Agreement at the time outstanding, each future holder of all such securities, and the Company.

5.10    Severability.

If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

13

MERIDIAN HEALTH SERVICES HOLDINGS, INC.
SERIES A PREFERRED STOCK AND CORPORATE BONDS PURCHASE AGREEMENT

5.11    Corporate Securities Law.

THE SALE OF THE SECURITIES THAT ARE THE SUBJECT OF THIS
AGREEMENT HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF
CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH
SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE
CONSIDERATION FOR SUCH SECURITIES PRIOR TO SUCH QUALIFICATION IS
UNLAWFUL, UNLESS THE SALE OF SECURITIES IS EXEMPT FROM QUALIFICATION
BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE.
THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY
CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE
IS SO EXEMPT.

5.12    Aggregation of Stock.

All shares of the Stock held or acquired by entities advised by the same investment
adviser and affiliated entities or persons shall be aggregated together for the purpose of
determining the availability of any rights under this Agreement.

5.13    Further Assurances.

Each Investor and the Company shall from time to time and at all times hereafter make,
do, execute, or cause or procure to be made, done and executed such further acts, deeds,
conveyances, consents and assurances without further consideration, which may reasonably be
required to effect the transactions contemplated by this Agreement.

5.14    Entire Agreement.

This Agreement constitutes the entire agreement among the parties with respect to the
subject matter hereof and no party shall be liable or bound to any other party in any manner by
any warranties, representations or covenants except as specifically set forth herein.

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

14

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

COMPANY:

**MERIDIAN HEALTH SERVICES HOLDINGS, INC.**

By: _____

    JAMES PREIMESBERGER, President

Address: **MERIDIAN HEALTH SERVICES HOLDINGS, INC.**
1230 Rosecrans Avenue, Suite 170 Manhattan Beach, California 90266
Facsimile: (310) 297-9190

SIGNATURE PAGE TO THE PURCHASE AGREEMENT

**INVESTOR:**

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Facsimile: _____

Taxpayer ID: _____

04/17/2015

SIGNATURE PAGE TO THE PURCHASE AGREEMENT

04/17/2015

# EXHIBIT B

**MERIDIAN HEALTH SERVICES HOLDINGS, INC.,**
**A CALIFORNIA CORPORATION**

SUBSCRIPTION AGREEMENT

### 1. Subscription:

(a) The undersigned ("Undersigned" or "Purchaser") hereby applies to become an owner of Series "A" Debentures (the "Debentures") in MERIDIAN HEALTH SERVICES HOLDINGS, INC., a California Corporation, (the "Company") indicated below in accordance with the terms and conditions of this Subscription Agreement provided to Purchaser concurrently with this Subscription Agreement.

(b) Before this subscription for Debentures is considered, the Undersigned must complete, execute, and deliver to JAMES PREIMESBERGER (the "President") the following:

(i) The purchaser's personal check in the amount of $10,000.00 per Debenture.

(c) The Undersigned understands that each Unit may be subject to voluntary or mandatory assessments in future as more fully described in the Bylaws.   The Undersigned understands that each Debenture has a twelve month duration which will yield interest at an annual rate of Fourteen percent (14%).  At the expiration of each Debenture the Company shall pay the Undersigned the purchase price originally paid for each expired Debenture.

(d) The President in its discretion may elect to take whatever action it deems in the best interest of the COMPANY to collect the amounts owing to the COMPANY, all as more fully described in the Bylaws.

(e) The Undersigned understands that the cash received by the COMPANY from each subscriber before the closing of the sale of COMPANY interests will be deposited in interest-bearing accounts for funds to the extent deemed reasonable and prudent by the President, and all interest earned will accrue to the benefit of the COMPANY.

(f) This Subscription is irrevocable. It may be rejected in whole or in part by the President in its sole discretion. In the event that this Subscription is rejected by the President, all funds and documents tendered by the Undersigned shall be returned, together with any interest earned by the COMPANY as allocated by the COMPANY as described above.

(g) The President has the discretion to accelerate the Closing Date and close the offering at any time after 1,000 of the Debentures have been subscribed. In the event 1,000 of the Debentures have not been subscribed by the Closing Date, the President has the discretion to (1) purchase unsold Debentures so as to achieve 1,000 Debentures sold, (2) permit other subscribers to purchase additional Debentures, or (3) terminate the offering and return all funds to subscribers with interest earned by the COMPANY, as described above. The President also has the discretion to extend the Closing Date. On the oral or written consent of the subscribers, the minimum number of Debentures may be reduced.

(h) This Subscription is not transferable or assignable by the Undersigned.

(i) This Subscription, upon acceptance by the COMPANY, shall be binding on the heirs, executors, administrators, successors, and assigns of the Undersigned.

(j) If the Undersigned is more than one person, the obligations of the Undersigned shall be joint and several and the representations and warranties shall be deemed to be made by and be binding on each such person and his heirs, executors, administrators, successors, and assigns.

## 2. Acknowledgments:

The Undersigned understands and acknowledges that:

(a) The COMPANY and the President have a short financial and operating history dating back to the COMPANY'S formation as of October 3, 2007.

(b) There are substantial risks incident to the ownership of Debentures in the COMPANY, and such investment is speculative and involves a high degree of risk of loss by the Undersigned of the Undersigned's entire investment in the COMPANY.

(c) The Undersigned has been advised to consult the Undersigned's own attorney concerning the COMPANY and to consult with independent tax counsel regarding the tax considerations of participating in the COMPANY.

(d) The books and records of the COMPANY will be reasonably available for inspection by the Undersigned and/or the Undersigned's representatives, if any, at the COMPANY's place of business.

(e) The federal income tax considerations to the Undersigned of investment in the COMPANY will depend on his/her particular circumstances, and the Undersigned shall rely solely on advice from his/her tax advisors. Neither the COMPANY nor the President have made any representations or warranties of any kind regarding this matter or the Purchaser's investment in the COMPANY.

2

(f) The federal income tax considerations to the Undersigned (if any entity) of investment in the COMPANY will depend on its particular circumstances, and the Undersigned shall rely solely on advice from its tax advisors. Neither the COMPANY nor the President have made any representations or warranties of any kind regarding the federal income tax considerations of a corporation, partnership, trust, or other form of business entity, or the Purchaser's investment in the COMPANY.

(g) There can be no assurance that the Internal Revenue Code or the Regulations under the Code will not be amended in a manner that would deprive the COMPANY or Members of some or all of the tax benefits described in the Memorandum.

(h) Financial projections provided by President or the COMPANY, if any, are estimates only, based upon assumptions that may be incorrect, and there can be no assurance of their accuracy. Further, the COMPANY may be audited by the Internal Revenue Service and certain deductions shown in the financial projections may be challenged by the Internal Revenue Service.

(i) The offering has not been registered under the Securities Act of 1933, as amended (the "Act").

(j) Since the Debentures have not been registered under the Act or registered or qualified under any state law, a purchaser of Debentures must bear the economic risk of investment for an indefinite period of time because the Debentures will bear a restrictive legend and may not be sold, pledged, or otherwise transferred in the absence of an effective registration or qualification under federal and applicable state law or an opinion by counsel to the COMPANY that such registration or qualification is not required.

(k) The Undersigned understands and acknowledges that the COMPANY is under no obligation and has not undertaken to register or qualify the sale, transfer, or other disposition of Debentures by it or on its behalf, to take any other action necessary in order to make compliance with an exemption from registration or qualification available or to register or qualify the Debentures at any time in the future.

(l) The Undersigned will not make any sale, transfer, or other disposition of Debentures except in compliance with the Act and its Rules and Regulations and applicable California and other state law.

(m) The transferability of Debentures is further restricted by the Bylaws. No public market exists for the Debentures or is anticipated to exist for the Debentures.

### 3. Representations:

The Undersigned represents and warrants as follows:

(a) The Undersigned has read and is familiar with the Bylaws.

3

(b) The Undersigned has carefully reviewed and understands the risks of, and other considerations relating to, a purchase of Debentures.

(c) The Undersigned and his/her representatives, if any, have been furnished all materials relating to the COMPANY and its proposed activities, the offering of Debentures or anything else that they have requested, and have been afforded the opportunity to obtain any additional information and ask all questions concerning the COMPANY and the Debentures necessary to verify the accuracy of any representations or information provided by the COMPANY or the President (if any) and to understand any additional matters the undersigned believes are necessary to evaluate the investment and associated risks.

(d) The President has answered all inquiries that the Undersigned and his/her representatives, if any, have put to it concerning the COMPANY and its proposed activities, the President, and all other matters relating to the COMPANY and the offering and sale of the Debentures.

(e) Neither the Undersigned nor his/her representatives, if any, have been furnished any offering literature, and the Undersigned and his/her representatives, if any, have relied only on the information, as described in subparagraphs (c) and (d) above, furnished or made available to them ( if any) by the COMPANY, its counsel, or the President.

(f) The Undersigned has not received any memorandum or written offering regarding this investment.

(g) The Undersigned is at least twenty-one (21) years of age.

(h) The Undersigned has an individual net worth in excess of $1,000,000 or has individual income in excess of $200,000 in each of the two most recent years and reasonably expects an income in excess of $200,000 in the current year or joint income together with his/her spouse of $300,000 in each of those two years and an expected joint income of $300,000 in the current year. If a partnership, each partner is within the above standard.

(i) The Undersigned has adequate means of providing for his/her current needs and personal contingencies, has no need for liquidity in his/her investment, could afford to lose the entire amount of his/her investment and understands that he/she may lose his/her entire investment.

(j) The Undersigned's commitment to all tax-sheltered investments is reasonable in relation to his/her net worth.

(k) The Undersigned is obtaining the Debentures for his/her own account (or for a trust account if the Undersigned is a trustee) for investment purposes and not with a view or intention to resell or distribute the same, and has no present intention,

4

agreement, or arrangement to divide his/her participation with others or to resell, assign, transfer, or otherwise dispose of all or any part of the Debentures for which the Undersigned has subscribed.

(l) The Undersigned has been advised that Debentures must be held indefinitely unless (i) distribution of Debentures is subsequently registered for resale under the Act or (ii) in the opinion of counsel acceptable to the Company, some other exemption from registration under the Act is available.

(m) If the Undersigned is a corporation, partnership, trust, or other entity, it is authorized and otherwise duly qualified to purchase and hold Debentures in the COMPANY. (If the Undersigned is one of the aforementioned entities, it hereby agrees to supply any additional written information that may be required.)

(n) Except as set forth below, all of the information concerning the Undersigned's financial position and business experience that the Undersigned has provided to the President, in the Investor Questionnaire completed by the Undersigned, is correct and complete as of this date, and, if there should be any material change in such information before the acceptance of this subscription by the President, the Undersigned will immediately furnish the revised or corrected information to the President.

Exceptions:

_____

_____

(o) [PLEASE CIRCLE (i), (ii), OR (iii), BELOW]

(i) The Undersigned has such knowledge and experience in business and financial matters that the Undersigned is capable of evaluating the COMPANY and its proposed activities, the risks and merits of investment in the Debentures and of protecting the Undersigned's interests and making an informed investment decision, and has not consulted with others in connection with evaluating such risks and merits.

(ii) The Undersigned has been advised by others, listed below (who are unaffiliated with and who are not compensated by the President or the COMPANY or any of its affiliates or selling agents, directly or indirectly), and now has such knowledge and experience in business and financial matters that the Undersigned is capable of evaluating the COMPANY and its proposed activities, the risks and merits of investment in the Debentures and of making an informed investment decision, and the persons listed below are not purchaser representatives utilized in connection with evaluating such risks and merits:

(1) _____

Name

_____
Relationship

(2)    _____
Name

_____
Relationship

(iii) The Undersigned and the Purchaser Representatives listed below (who are unaffiliated with and who are not compensated by the President or the COMPANY or any of its affiliates or selling agents, directly or indirectly) together have such knowledge and experience in business and financial matters that the Undersigned and the purchaser representatives together are capable of evaluating the COMPANY and its proposed activities, and the risks and merits of investment in the Debentures and of making an informed investment decision.

Purchaser Representatives: (Each person listed must complete a Purchaser Representative Questionnaire in the form required by the President, which must be acknowledged by the Subscriber):

(1)    _____
Name

_____
Relationship

(2)    _____
Name

_____
Relationship

(p) The Undersigned is not relying on the President nor any of its officers or shareholders for independent legal, accounting, financial, or tax advice in connection with the Undersigned's evaluation of the risks and merits of investment in the COMPANY and the consequences to the Undersigned of such an investment.

## 4. Adoption of Bylaws:

The Undersigned adopts, accepts, and agrees to be bound by all of the terms and provisions of the Bylaws and to perform all obligations imposed on a Member with respect to the Debentures purchased. On acceptance of this Subscription Agreement by the President on behalf of the COMPANY, and on filing by the President of Articles of

6

Organization establishing the COMPANY, the Undersigned shall become a member of the COMPANY for all purposes.

## 5. Indemnification:

(a) The Undersigned agrees to indemnify the President and the COMPANY and hold the President and the COMPANY harmless from and against any and all liability, damage, cost, or expense incurred on account of or arising out of:

(i) Any inaccuracy in the Undersigned's declarations, representations, and warranties set forth in this document or in any other declarations, representations, and warranties in other communications to the COMPANY;

(ii) The disposition of any of the Debentures that the Undersigned will receive, contrary to the Undersigned's foregoing declarations, representations, and warranties; and

(iii) Any action, suit, or proceeding based on (1) the claim that declarations, representations, or warranties were inaccurate or misleading or otherwise cause for obtaining damages or redress from the President or the COMPANY; or (2) the disposition of any of the Debentures or any part of them.

(b) The Undersigned consents to the indemnification of the President by the COMPANY, to the extent such indemnification is lawful, in accordance with the terms and conditions of the Bylaws.

## 6. Choice of Laws:

This Agreement shall be construed in accordance with and governed by the laws of the State of California except for the manner in which the Undersigned elects to take title to Debentures, which shall be construed in accordance with the laws of the state of his or her principal residence.

## 7. Power of Attorney:

(a) The Undersigned irrevocably constitutes and appoints the President with full power of substitution as his true and lawful attorney-in-fact and agent, to execute, acknowledge, verify, swear to, deliver, record, and file, in the Undersigned's name or his/her assignees' name, place, and stead, all instruments, documents, and certificates that may from time to time be required by the laws of the United States of America, the State of California, and any other state in which the COMPANY conducts or plans to

7

conduct business, or any political subdivision or agent of the government to effectuate, implement, and continue the valid existence of the COMPANY, including, without limitation, the power and authority to execute, verify, swear to, acknowledge, deliver, record, and file the following:

(i) The Bylaws, the Articles of Organization, and all other instruments (including amendments) that the President deems appropriate to form, qualify, or continue the COMPANY as a limited liability company in the State of California and all other jurisdictions in which the COMPANY conducts or plans to conduct business;

(ii) All instruments that the President deems appropriate to reflect any amendment to the Bylaws, or modification of the COMPANY, made in accordance with the terms of the Bylaws;

(iii) A fictitious business name certificate and such other certificates and instruments as may be necessary under the fictitious or assumed name statute from time to time in effect in the State of California and all other jurisdictions in which the COMPANY conducts or plans to conduct business;

(iv) All instruments relating to the admission of any additional or substituted Member; and

(v) All conveyances and other instruments that the President deems appropriate to reflect the dissolution and termination of the COMPANY under the terms of the Bylaws.

Such agent and attorney-in-fact shall not, however, have the right, power, or authority to amend or modify the Bylaws when acting in such capacities, except to the extent authorized in this document and in the Bylaws.

(b) The power of attorney granted is a special power of attorney and shall be deemed to be coupled with an interest, shall be irrevocable, shall survive the death, dissolution, bankruptcy, incompetency, or legal disability of the Undersigned, and shall extend to the Undersigned's heirs, successors, and assigns. The Undersigned agrees to be bound by any representations made by the President acting in good faith under such power of attorney, and each Member waives any and all defenses that may be available to contest, negate, or disaffirm any action of the President taken in good faith under such power of attorney.

## 8. Subscription for Debentures:

Number of Debentures (including fractions thereof) subscribed for:

_____

8

Member Information: (The information below should be consistent with the form of ownership selected below.)

Name (please print):

_____

If entity named above,

By_____  By_____

Social Security or Taxpayer I.D. Number:

_____

Taxable year end

_____

Name of Company

_____



Business Address (including zip code)

_____

_____

Business Phone

_____

Residence Address (including zip code)

_____

_____

Residence Phone

_____

All communications to be sent to:

[  ] Business or

[  ] Residence Address

PLEASE INDICATE BY CHECKING THE APPROPRIATE BOX BELOW THE FORM IN WHICH YOU WILL HOLD TITLE TO YOUR INTEREST. PLEASE CONSIDER CAREFULLY. ONCE YOUR SUBSCRIPTION IS ACCEPTED, A CHANGE IN THE FORM OF TITLE CONSTITUTES A TRANSFER OF THE MEMBERSHIP INTEREST AND WILL THEREFORE BE RESTRICTED BY THE TERMS OF THE BYLAWS AND RESULT IN ADDITIONAL COSTS TO YOU. SUBSCRIBERS SHOULD SEEK THE ADVICE OF THEIR ATTORNEYS IN DECIDING IN WHICH OF THE FORMS THEY SHOULD TAKE OWNERSHIP OF THE DEBENTURES, BECAUSE DIFFERENT FORMS OF OWNERSHIP CAN HAVE VARYING GIFT TAX, ESTATE TAX, INCOME TAX, AND OTHER CONSEQUENCES, DEPENDING ON THE STATE OF THE INVESTOR'S DOMICILE AND HIS OR HER PARTICULAR PERSONAL CIRCUMSTANCES. FOR EXAMPLE, IN COMMUNITY PROPERTY STATES, IF COMMUNITY PROPERTY ASSETS ARE USED TO PURCHASE DEBENTURES HELD AS SEPARATE PROPERTY, ADVERSE GIFT TAX CONSEQUENCES MAY RESULT.

[  ] INDIVIDUAL OWNERSHIP (one signature required)

[  ] JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON (both or all parties must sign)

[  ] COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP(one signature required if interest held in one name, i.e., managing spouse; two signatures required if interest held in both names)

[  ] TENANTS IN COMMON (both or all parties must sign)

[  ] GENERAL PARTNERSHIP (fill out all documents in the name of the PARTNERSHIP, by a PARTNER authorized to sign, and include a copy of the Partnership Agreement)

[  ] LIMITED PARTNERSHIP (fill out all documents in the name of the LIMITED PARTNERSHIP, by a GENERAL PARTNER authorized to sign, and include a copy of the Limited Partnership Agreement and any other document showing that the investment is authorized)

10

[  ] CORPORATION (fill out all documents in the name of the CORPORATION, by the President or other officer authorized to sign, and include a copy of the Corporation's Articles and certified Corporate Resolution authorizing the signature)

[  ] TRUST (fill out all documents in the name of the TRUST, by the trustee, and include a copy of the instrument creating the trust and any other documents necessary to show that the investment by the trustee is authorized. The date of the trust must appear on the Notarial where indicated)

Subject to acceptance by the President, the Undersigned has completed this Subscription Agreement and executed the Bylaws (together with Spousal Consent) to evidence his/her subscription to MERIDIAN HEALTH SERVICES HOLDINGS, INC., this _____ day of _____, 2008.

_____ Subscriber

_____ Subscriber

_____ Subscriber

SUBSCRIBERS MUST ALSO EXECUTE THE BYLAWS AND SPOUSAL CONSENT PROVIDED HEREWITH

The President has accepted this Subscription this _____ day of _____, 2008.

**MERIDIAN HEALTH SERVICES HOLDINGS, INC.**

By: _____ President
     James Preimesberger

*11*

04/17/2015

# EXHIBIT C

Amount $200,000

Date: March 25, 2011

## PROMISSORY NOTE

**Recitals.** Whereas Northgate Care Center Inc., desires to borrow the sum below for purposes of general operating capital and facilitating the sub-leasing of Northgate Care Center, Inc to Calais Preimesberger, from Meridian Health Services Holdings, Inc.

For value received, the undersigned, Northgate Care Center Inc., California Corporations ("Maker"), promises to pay to the order of: Uma Kale&Ashay Kale Joint Tenents in Common and his/her respective heirs, successors and assigns (collectively "Payee"), the principal sum of 200 thousand dollars ($200,000) together with interest thereon, at the rate set forth below, as follows:

**Interest Rate.** This Secured Promissory Note ("Note") shall bear interest on the unpaid principal balance at the rate of twenty percent (20%) per annum.

**Principal, Maturity Date and Interest Payments.** Commencing on the first (1st) day of the calendar month next following the date of this Note (the "Commencement Date"), and continuing on the first (1st) day of each calendar month thereafter, interest only on the current principal balance as accrued from the Commencement Date shall be due and payable. The maturity date (the "Maturity Date"), shall be six (6) months from the commencement date and the entire remaining unpaid principal balance of this Note, together with any and all unpaid, accrued interest thereon, shall be due and payable. Any accrued interest not paid when due shall bear interest at the same rates as the principal hereunder.

All monthly payments shall be due on the first business day of each month and shall be late if not received by Payee by the fifth (5th) business day of the month. All installments of principal and interest shall be payable in lawful money of the United States of America, at such place as the holder hereof may designate in writing from time to time.

**Default.** Each of the following shall constitute a default ("Event of Default") by Maker under this Note:

1. If Maker shall fail to fully pay (as described herein above) any installment of principal or interest on this Note on or before ten (10) business days following the due date;

2. If Maker shall fail to perform any covenant or obligation under this Note (other than the failure to make the payments described in Paragraph 1, above and does not cure or commence to cure as quickly as possible that failure within ten (10) days of the due date;

**Acceleration.** Upon the occurrence of an Event of Default, or at any time thereafter, the entire balance of this Note, irrespective of the Maturity Date shall, at the election of Payee, and without notice of such election, become immediately due and payable.

1

Promissory Note

**Prepayment**.  Maker reserves the right and privilege, at Maker's option, without charge or penalty of any kind, to prepay all or, from time to time, any portion of the principal balance of this Note before it becomes due (a "Prepayment").  Upon Maker's tender of any Prepayment, interest shall cease to accrue on the amount of such Prepayment.

**Location and Designation of Payment**.  Maker is hereby authorized and directed by Payee to make all payments on this Note to the address:

        Name:     Uma & Ashay Kale
        Address:  664 Varese Ct.
                  Pleasanton, CA 94566

                              "Maker"

                              Northgate Care Center, Inc.
                              A California Corporation

                              By: _____
                                  James Preimesberger, President

                              Guarantead by:

                              By: _____
                                  James Preimesberger, President
                                  Meridian Health Services Holdings, Inc

                              By: _____
                                  James Preimesberger, an Individual

Promissory Note

**VIA FAX**

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
George G. Braunstein, Esq. SBN 134602
Clark Anthony Braunstein, Esq. SBN 278023 Braunstein & Braunstein, P.C.
11755 Wilshire Blvd. Suite 2140
Los Angeles, CA 90025
TELEPHONE NO: 310-914-4999          FAX NO: 310-914-4996
ATTORNEY FOR *(Name):* Lingagoud Memula et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 600 S. Commonwealth Ave.
MAILING ADDRESS: 600 S. Commonwealth Ave.
CITY AND ZIP CODE: Los Angeles, CA  90005
BRANCH NAME: Central Civil West Courthouse

**FOR COURT USE ONLY**

**FILED**
Superior Court of California
County of Los Angeles

APR 17 2015

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Myrna Beltran

CASE NAME:
Lingagoud Memula et al vs James Preimesberger et al

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: BC 5 7 9 1 8 9 |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☑ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* Eleven
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: April 17, 2015

Clark Anthony Braunstein
_____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

**VIA FAX**
BC579189

| SHORT TITLE | CASE NUMBER |
|---|---|
| Lingagoud Memula, et al, vs James Preimesberger et al | |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 14-21 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

*Left margin: Auto Tort / Other Personal Injury/Property Damage/ Wrongful Death Tort*

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE | | CASE NUMBER |
|---|---|---|
| Lingagoud Memula, et al, vs James Preimesberger et al | | |

| | A<br>.Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1.,.2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1.,.2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2.,.5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2.,.6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2.,.6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2.,6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE | | CASE NUMBER |
|---|---|---|
| Lingagoud Memula, et al, vs James Preimesberger et al | | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☑ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☑ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | | CASE NUMBER |
|---|---|---|
| Lingagoud Memula, et al, vs James Preimesberger et al | | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1,** as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 11620 W Washington Blvd |
|---|---|
| ☑1. ☑2. ☑3. ☐4. ☑5. ☐6. ☐7. ☑8. ☐9. ☐10. | |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90066 |
|---|---|---|

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Central Civil West___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: April 17, 2015

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.